### PEOPLE v DERSA

1. CRIMINAL LAW—CLOSING ARGUMENT—IMPROPER REMARKS—BURDEN OF PROOF—CURATIVE INSTRUCTIONS.

   A statement by the prosecutor in his closing argument that the burden was on the defendant to produce certain evidence to substantiate the testimony of defendant's witnesses was improper, but the trial court's immediate instruction to the jury that "there's no burden upon the defendant to produce any type of evidence" either corrected the error or rendered it harmless.

2. CRIMINAL LAW—PROSECUTOR'S REMARKS—IMPROPER REMARKS—RESPONSE.

   A prosecutor's improper remarks do not constitute reversible error where the remarks are made in rebuttal to matters first raised by defense counsel.

3. CRIMINAL LAW—PROSECUTOR'S REMARKS—IMPROPER REMARKS—PERMISSIBLE INFERENCE.

   A prosecutor's comment on a defendant's failure to counter a legitimate inference from facts in evidence is not improper as a comment on defendant's failure to testify or produce evidence.

4. CRIMINAL LAW—TRIAL—CONTINUANCE—DISCRETION.

   The trial court did not abuse its discretion in refusing to grant defendant's request for a continuance to obtain the presence of a witness where the trial had just resumed after a two-day adjournment which afforded defendant the opportunity to produce the witness.

5. CRIMINAL LAW—NEW TRIAL—NEW EVIDENCE—WITNESSES.

   The production of a witness to testify that defendant did not have

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 53 Am Jur, Trial §§ 469–473, 506.
[2] 53 Am Jur, Trial § 468.
   What amounts to violation of statute forbidding comment by prosecuting attorney on failure of accused to testify, 68 ALR 1108.
[4] 17 Am Jur 2d, Continuance §§ 27, 29, 32.
[5] 58 Am Jur 2d, New Trial § 176.

a beard at the time a crime was committed is not new evidence warranting a new trial where six other defense witnesses had testified to this claimed fact.

Appeal from Oakland, Frederick C. Ziem, J. Submitted Division 2 June 21, 1972, at Lansing. (Docket No. 12145.) Decided August 29, 1972. Leave to appeal denied, 388 Mich 803.

Leonard Dersa, Jr., was convicted of larceny over $100. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Thomas G. Plunkett,* Prosecuting Attorney, and *William G. Wolfram,* Assistant Prosecuting Attorney, for the people.

*Paul G. Valentino, P. C.,* for defendant.

Before: HOLBROOK, P. J., and R. B. BURNS and T. M. BURNS, JJ.

HOLBROOK, P. J. Leonard Dersa, Jr., defendant, in a jury trial held May 24, 25, and 27, 1971, was convicted of the crime of larceny over $100, MCLA 750.356; MSA 28.588.

Defendant has appealed and asserts (a) that the prosecutor committed reversible error in his closing argument; and (b) that a denial of defendant's request for a continuance by the trial court prevented defendant an opportunity to present an adequate defense and was reversible error.

There are four parts of the prosecutor's oral argument that defendant claims constituted reversible error.

## (1)

During his closing argument to the jury, the assistant prosecutor, Mr. Franklin Koory, made the following comments:

"Now, the defendant's witnesses also testified that he was not driving the white Pontiac Tempest in November of 1970. But let me ask you didn't one witness come into this court and state that the defendant was so interested in that white Tempest that he went all the way over to the beauty salon trying to have it towed away?

"Now, there was testimony that he was driving a GTO at that time. Now, the evidence—there was no evidence whatsoever in the record that he owned a GTO. And while the burden of proof is never upon the defendant in any criminal case, when there is evidence within the defendant's control and evidence that the defendant can obtain, the burden is upon him to get it.

"Why didn't the defendant get a certified copy from the Secretary of State that a GTO was registered to the defendant?"

At this point, the following occurred:

"*Mr. Valentino [defense counsel]:* Objection. I didn't know that was material to the case, your Honor.

"*The Court:* This is argument. Objection overruled.

"*Mr. Koory:* Thank you, your Honor.

"The only question Mr. Valentino asked each of these witnesses was 'at one time or another did you see him drive a GTO in the month of November?'

"Now, when Mr. Valentino addresses you, he will owe you a convincing explanation of why he didn't obtain a certified copy of the record of that GTO from the Secretary of State.

"*Mr. Valentino:* Your Honor, I must object to this type of argument.

"*The Court: Well, I instruct the jury there's no burden upon the defendant to produce any type of evi-*

*dence. The burden is upon the people to prove guilt
beyond a reasonable doubt.*

*"Mr. Koory:* The people agree with that proposition."
(Emphasis supplied.)

Since the trial court immediately instructed the
jury that "there's no burden upon the defendant to
produce any type of evidence" and that the "bur-
den is upon the people to prove guilt beyond a
reasonable doubt", the improper comment of the
assistant prosecutor: (a) was corrected by the trial
court; or (b) was, thereby, rendered harmless error.
See *People v Alexander,* 26 Mich App 321 (1970)
and *People v Cavataio,* 34 Mich App 126 (1971).

### (2)

During his closing argument to the jury, defense
counsel, Paul Valentino, made the following com-
ments:

"Again, this is all incredible. Who do they bring in? A
hair dresser, who does his ex-wife's hair. She's now at a
new shop. Donna Dersa, the ex-wife of this defendant, is
at the new shop, too, having her hair done.

"What about the police officer, the Waterford Town-
ship Police officer? Why didn't the people bring the
police officer in here to corroborate the story? Goodness
gracious, all the power of the state. They own the police
officer, ladies and gentlemen. All they have to do is pick
up the phone, call Chief Stokes in Waterford Township
and say 'send officer so-and-so, who on Thanksgiving
Eve—' because he made a report. You remember what
the witness said, he made a report. If he made a report,
it's in the file. Why didn't they bring the police officer
in to testify?

*"Mr. Koory:* Objection. There's no evidence in the
record that any report has been filed with the Water-
ford Township Police.

*"The Court:* Somebody testified there was one. I recall
that.

"*Mr. Valentino:* Thank you.

"Why didn't they bring in the police officer? He doesn't know anybody. I feel kind of sorry for him. Here are two people in a divorce suit, fighting. One of them with a wrecker, trying to have a car towed away. Here comes a poor police officer. I think he would remember if the man had a bushy beard. I think he would remember, ladies and gentlemen.

"I feel kind of sorry for him. The people didn't bother to bring him in, even though he is their man.

"What about the wrecker driver? Why didn't they bring him? We tried. You heard this morning. They've had plenty of time, but isn't it strange—I assume their witness did not fall out of the sky into that witness box yesterday. I can only assume that she had told the prosecution all about this incident, as she had told it from the witness stand.

"Why did the people not bring other persons to corroborate her testimony? I suggest to you they didn't bring them because the police officer would have said this man was clean-shaven when he came and tried to get his car with the wrecker. That's what I think he would have said."

During his *rebuttal* argument to the jury, the assistant prosecutor made the following reply to the above-quoted argument of defense counsel:

"Now, Mr. Valentino asked why we didn't bring in the police officer who was at the beauty shop the day that the car was picked up by the wrecker to testify to this particular matter.

"Well, ladies and gentlemen, the police officer was simply not brought in on our part. And if Mr. Valentino wanted to bring him in, he has the same power of subpoena that we have. If Mr. Valentino wanted him as a witness, and Mr. Valentino had an opportunity to investigate this on Wednesday, he could have simply brought the man in. He would have, if it would have helped his case out. But apparently Mr. Valentino didn't feel—

"*Mr. Valentino:* Objection.

"*The Court:* Objection sustained as to 'apparently'. Objection sustained.

"*Mr. Koory:* I didn't understand that objection.

"*The Court:* You cannot comment as to 'apparently' what was in his mind. You may comment as to what he did or did not do, but not what was apparently in his mind.

"*Mr. Koory:* Well, if he would have been a good witness for Mr. Valentino, why didn't Mr. Valentino bring him in?"

The above-quoted comments of the assistant prosecutor did *not* prejudice the defendant's right to a fair and impartial trial because these comments were *made in rebuttal* to matters first raised by defense counsel during his closing argument to the jury. See *People v Harris,* 31 Mich App 100 (1971), and *People v Green,* 34 Mich App 149, 151 (1971).

(3)

During his closing argument to the jury, defense counsel made the following comments:

"Now, are we to assume that every one of the relatives of the defendant would lie as to whether or not he had a beard? Would you? Would I? Would I take the witness stand, under oath, face the penalty of perjury, and lie about whether or not a relative had a beard?

"Who would you go to, ladies and gentlemen, to find out whether or not a man wore a beard in the month of November besides relatives and friends? Who in the world can a man, who's accused of committing a crime go to? Who knows him best? Who has more opportunity to view him and see him and know whether or not he had a beard? It is the people's contention that what he should have done is gone down to Detroit and find someone who never saw him before in his life and say to this man, 'Come to court and tell the jury that I didn't have a beard in November of 1970.'

"Is that who we would go find, or would we go find those who know us best? The family, his minister. Is he a liar, too? He says on November 9th he was with the family three days. Is the minister a liar? He says the man was clean-shaven at his father's funeral, 20 days before this incident occurred, on the 9th. Is he a liar? Is he a liar? I suggest to you not."

During his *rebuttal* argument to the jury, the assistant prosecutor made the following reply to the above-quoted argument of defense counsel:

"Now, Mr. Valentino mentioned, during the course of his argument, that the defendant had nobody else to go to besides his relatives to corroborate the fact that he had a beard during the month of November. What about Mr. Dersa's employer? What about any other disinterested person that Mr. Dersa would have come in contact with during the month of November.

"And let me remind you that from the time of the preliminary examination, when Mrs. Rice first testified that he had a beard—and this took place on December 28, 1970—".

At this point, the following occurred:

"*Mr. Valentino:* November 30th—oh, the preliminary examination, I'm sorry.

"*Mr. Koory:* On December 28, 1970—

"*Mr. Valentino:* Objection, it couldn't very handily have taken place on November 28, 1970, when the offense—

"*Mr. Koory:* I said December 28, 1970.

"*Mr. Valentino:* Your Honor, I didn't know we had the transcript of the preliminary examination in evidence.

"*The Court:* It's in the file, he can comment on that date.

"*Mr. Koory:* Thank you.

"The defendant has had since December 28, 1970, to locate any other person, other than relatives, who could

have offered probative testimony as to the fact that he had a beard during the month of November."

We conclude that the above-quoted comments of the assistant prosecutor did *not* prejudice the defendant's right to a fair and impartial trial because these comments were *made in rebuttal* to matters first raised by defense counsel during his closing argument to the jury. See *People v Harris, supra,* and *People v Green, supra.*

(4)

During the assistant prosecutor's rebuttal argument to the jury, the following occurred:

"Now, if the defendant claims that his car was stolen on November 30, 1970, why didn't he report that stolen car to the police?

"*Mr. Valentino:* Objection.

"*Mr. Koory:* In order to—

"*The Court:* You made no claim of a stolen car?

"*Mr. Valentino:* Of course not. We never have.

"*The Court:* Objection sustained.

"*Mr. Koory:* Well, if defendant claims somebody else besides himself was driving that car on November 30, 1970, why didn't he bring in the person who was driving the car?

"*Mr. Valentino:* Objection, the defendant doesn't have to produce any such thing.

"*The Court:* Objection sustained.

"*Mr. Koory:* Then, ladies and gentlemen, I don't know what the defendant's claim is as to what happened to the car on November 30, 1970. Thank you."

As the people argue in their appellate brief, the above-quoted remark by the prosecutor cannot be characterized as a comment on defendant's failure to testify or produce evidence. Rather, it is a comment on defendant's failure to counter a legiti-

mate inference from the facts—that defendant owned the Pontiac Tempest and has failed to explain how it came to be that on the day of the crime some mysterious bearded man was driving it. Furthermore, the trial court precluded any further argument concerning this specific issue. Moreover, the trial court instructed the jury to disregard any remarks or arguments made by either counsel, if such remarks or arguments were not supported by the evidence presented during the trial. *People v Alexander, supra.* The above-quoted comment by the assistant prosecutor does *not* constitute reversible error.

Defendant claims he was prejudiced by the trial court's refusal to grant a continuance to obtain the presence of a witness. The record discloses the following colloquy between defendant's counsel, the court, and the prosecutor:

Proceedings on May 25, 1971:

"*The Court:* You may proceed with your argument.

"*Mr. Koory:* Your Honor, may I argue the case Thursday morning [May 27, 1971]?

"*The Court:* Any objection?

"*Mr. Valentino:* Yes, your Honor, I think we ought to get this thing over with now.

"*Mr. Koory:* I don't have my argument prepared now, summation prepared.

"*Mr. Valentino:* I'm in the same position counsel is now. I'm willing to risk the facts that came before the court, as opposed to what I can prepare.

"*The Court:* Can you finish all the arguments before 4:30 if we proceed?

"*Mr. Valentino:* I'll be very brief.

"*The Court:* Do you need more time?

"*Mr. Koory:* Yes, your Honor, I've been trying to explain that.

"*The Court:* Members of the jury, we'll recess this

cause until Thursday morning. As you know, we do not hear jury cases on Wednesday, and that will be the reason for the delay until Thursday morning.

\* \* \*

"*Mr. Valentino:* I have a matter I'd like to take up.

"*The Court:* The jury may be excused.

*(Jury leaves the courtroom)*

"*The Court:* The record may show the jury is not in the courtroom.

"*Mr. Valentino:* May it please the court, since we're going to go over until Thursday morning with this matter, I would ask leave to produce—I think we'll bring the wrecker driver in, who can testify. I don't know who the police officer is. I know who the wrecker driver is.

\* \* \*

"*The Court:* I thought both of you had rested. I suppose if you're going to do that, you can get the police officer in, too, if anybody wants to bring him in, if it's brief testimony, I'll allow you to present it at that time.

"*Mr. Valentino:* Thank you, your Honor. We won't be more than five minutes.

"*The Court:* Court is recessed."

Proceedings on May 27, 1971:

"*The Court:* Are you ready for the return of the jury?

"*Mr. Valentino:* Yes. I have one problem, I have a minister to testify to the state of Mr. Dersa's face. The wrecker driver indicated he would come here. I have an officer out to get him now.

"*The Court:* We'll have to proceed. He's had plenty of notice. We're a half hour late for trial.

"*Mr. Valentino:* The witness didn't appear.

"*The Court:* Was he subpoenaed?

"*Mr. Valentino:* Yes, your Honor.

"*Mr. Koory:* I don't believe there's been a return filed.

"*Mr. Valentino:* Well, there wouldn't be a return. The subpoena just went out last night.

"*The Court:* How long is this going to take?

"*Mr. Valentino:* He's on his way. I've just checked.

"*The Court:* Have they got him now?

"*Mr. Valentino:* He's on his way out to where he lives. He was supposed to be here at 8:30.

"*The Court:* It's now 9:30, both sides have rested.

"*Mr. Valentino:* I understand. It seems to me, in view of the testimony of the last witness, the interests of justice would allow us to produce a witness present at the same time who knows neither of the parties.

"*The Court:* Let's proceed with this one.

"*Mr. Koory:* I'm going to object to the minister taking the witness stand, it's improper sur-rebuttal.

"*The Court:* Objection overruled, if it has any bearing on the issues of this case. If he's here, he ought to be allowed to testify. *[The witness testified.]*

\* \* \*

"*Mr. Valentino:* Your Honor, we have the sheriff out getting the wrecker driver. If I might have a 15, 20 minute recess, I could call and see if they have him. He was supposed to be here this morning. I did call and ask the sheriff to go and bring him in.

"*The Court:* How far did he have to go?

"*Mr. Valentino:* The wrecker driver lives in an apartment above Jason's in Waterford Township on Dixie Highway, less than eight miles from this courtroom. And I asked them to go get him about five or ten after nine, when he did not appear as he was supposed to.

\* \* \*

"*The Court:* The record may indicate the jury is not in the courtroom. The record may show the time is now 10:15. Your witness has not arrived yet?

"*Mr. Valentino:* No, your Honor, and it looks like they won't be able to produce him."

It is difficult to find an abuse of discretion in the court's decision to proceed with the trial after a two-day adjournment which afforded defendant the opportunity to produce the two missing witnesses. Defendant did produce one witness, but failed to produce the other. If the claim of defendant is that the production of the additional witness is new

evidence warranting a new trial, we point out that the purpose of having the missing witness testify was to show that the defendant did not have a beard. Six other defense witnesses testified to this claimed fact. *People v Keiswetter,* 7 Mich App 334 (1967), holds that new evidence must be (a) newly discovered, (b) not cumulative, (c) not available at trial, and (d) likely to produce a different result upon retrial. We hold that defendant has failed to establish any of these requirements with the possible exception of (c), not available at trial, and it is not clear that defendant properly served the witness with a criminal subpoena before Thursday, May 27, 1971, the last day of the trial.

Defendant has failed to show any prejudicial error requiring a new trial.

Affirmed.

All concurred.