PEOPLE v FOSTER

Docket No. 98430. Submitted June 29, 1988, at Detroit. Decided
   February 23, 1989.

   Johnny Foster was convicted of assault with intent to do great
   bodily harm less than murder and possession of a firearm
   during the commission of a felony following a jury trial in the
   Recorder's Court for the City of Detroit, John Patrick O'Brien,
   J. Defendant appealed contending that prosecutorial miscon-
   duct shifted the burden of proof, thus denying defendant a fair
   trial.

   The Court of Appeals *held:*

   1. The facts indicate a series of prosecutorial misconduct
   which was not objected to by defense counsel and which could
   not have been cured by an appropriate instruction. The failure
   to consider the issue of such misconduct would, in this case,
   result in a miscarriage of justice.

   2. Defendant was denied a fair trial. He was denied his sole
   defense by the prosecutor's misconduct. The errors were not
   harmless beyond a reasonable doubt.

   Reversed and remanded.

   MICHAEL J. KELLY, P.J., dissented and noted his belief that
   any prejudicial effect caused by the prosecutor's comments was
   not so great that it could not have been cured by a proper
   instruction or that failure to review the alleged errors would
   result in a miscarriage of justice. He would find the alleged
   errors to be waived based on defense counsel's failure to object
   at trial.

1. PROSECUTING ATTORNEYS — BURDEN OF PROOF.

   A prosecutor may not suggest in closing argument that the
   defendant must prove something or present a reasonable expla-
   nation for damaging evidence as this argument tends to errone-
   ously shift the burden of proof.

REFERENCES
Am Jur 2d, Appeal and Error §§ 624-627, 869; Trial §§ 218 *et seq.*
Supreme Court's views as to what courtroom statements made by
   prosecuting attorney during criminal trial violate due process or
   constitute denial of fair trial. 40 L Ed 2d 886.

2. PROSECUTING ATTORNEYS — PROSECUTORIAL MISCONDUCT.

The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial.

3. PROSECUTING ATTORNEYS — PROSECUTORIAL MISCONDUCT — APPEAL — PRESERVING QUESTION.

Appellate review of alleged erroneous prosecutorial comments is foreclosed where defense counsel failed to object thereto in the trial court unless the prejudicial effect was so great that it could not have been cured by an appropriate instruction and failure to consider the issue would result in a miscarriage of justice.

4. PROSECUTING ATTORNEYS — BURDEN OF PROOF.

A prosecutor errs where his remarks at trial constitute testimony which tends to shift the burden of proof onto the defendant.

5. ATTORNEY AND CLIENT — COMMENTS ON PRIVILEGE.

The attorney-client privilege is fundamental to our system of jurisprudence and the privilege is destroyed where improper inference is drawn from its exercise.

6. PROSECUTING ATTORNEYS — BURDEN OF PROOF.

Comments by a prosecutor that the jurors must have a reason to doubt the defendant's guilt have the effect of impermissibly shifting the burden of proof onto the defendant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Olga Agnello,* Assistant Prosecuting Attorney, for the people.

*Patricia S. Slomski,* for defendant on appeal.

Before: MICHAEL J. KELLY, P.J., and MAHER and M. WARSHAWSKY,* JJ.

M. WARSHAWSKY, J. Defendant appeals as of right from a jury trial in which defendant was convicted of assault with intent to do great bodily harm less than murder, MCL 750.84; MSA 28.279,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

and possession of a firearm during the commission
of a felony, MCL 750.227b; MSA 28.424(2), con-
tending that prosecutorial misconduct shifted the
burden of proof, thus denying defendant a fair
trial. Defendant also appeals his sentences of two
to ten years and two years, respectively. We re-
verse.

Defendant's convictions arise from a shooting
incident which occurred on May 29, 1986, in a
residential Detroit neighborhood. There is conflict-
ing testimony as to what took place at the time
complainant, Leroy Saunders, was shot. Roberta
Flow, a neighbor, heard defendant and Saunders
arguing. Defendant had come out of his front door
carrying two containers of water and Saunders
was on his porch. The witness heard two shots and
saw Saunders jump up and run into his house.
When Saunders came out of his house, he had a
rifle and said he was "going to shoot all of them."
Flow never saw defendant with a gun.

Leroy Saunders testified that he was on his
porch when defendant accused him of calling de-
fendant's daughter a "dog." Defendant was on his
front porch across the street and had a .22 caliber
automatic rifle in his hand. During the argument,
defendant lifted his gun and shot at Saunders four
times. Saunders testified he was unarmed. He was
struck twice in the leg and two shots missed.
When the police arrived, defendant ran.

The defense theory was that defendant did not
shoot Saunders, someone else did; that prior to the
shooting, defendant had filed complaints with the
police against Saunders; and that Saunders, to
retaliate against defendant for these reports, iden-
tified defendant as the person who shot him.

On cross-examination, Saunders said he did not
believe defendant had complained to the police
about him because defendant had no reason to

complain. On direct examination, Saunders had admitted to four past felony convictions and one past misdemeanor conviction.

Defendant testified that on May 29, 1986, he was repairing his automobile when Saunders started a conversation with him. Defendant asked Saunders to leave him alone and Saunders threatened defendant. Saunders made a statement about "blowing our heads off" and then defendant heard shots and ran. Defendant denied owning a weapon or having a weapon on that day. Before this incident, defendant and his wife had gone to the fifth precinct with complaints about Saunders. Defendant's wife, Linda Foster, testified that Saunders threatened defendant and their family, went into his house, and came back with a rifle. Linda Foster testified that she heard three or four shots. She said defendant did not have a gun.

Another witness, Harmon Pitts, testified that he was helping defendant fix defendant's automobile on the day of the shooting. Defendant and Pitts were pouring water into the car's radiator about two or three minutes after Pitts heard shots fired. When the police arrived, defendant left. Pitts denied telling the police that defendant had run. Pitts never saw defendant with a gun.

On direct examination, defense counsel asked defendant about the complaints he had filed against Saunders, at which time the prosecutor objected:

> *Ms. Donahue:* Wait a minute. Are we going through the whole scenario?
> *The Court:* We have hearsay here, haven't we?
> *Ms. Donahue:* Your Honor, I want to see the complaints. I want to see the police departent [sic] reports. I don't think he should be allowed to make things up.

*Witness:* They're not being made up under oath.

*The Court:* It is for the jury to decide whether he is telling the truth.

*Ms. Donahue:* He said they made police reports. Let's see the official records.

*Witness:* I didn't understand that those records . . . .

*The Court:* Is he going to represent himself?

*Mr. Loney:* The prosecution answered the question. The witness told us he didn't understand why there weren't any records when he made reports out.

*The Court:* Those are matters for cross examination. Go ahead.

*Ms. Donahue:* Your Honor, we had some discussions about records being brought in. I don't think we should go into that, now.

On cross-examination, the prosecution sought to impeach defendant by asking whether defendant, or his counsel, attempted to produce copies of the police reports at trial:

*Q.* Do you know if your attorney or did you, yourself, ask police officers at the Fifth Precinct to bring down copies of any complaints that you made against Mr. Saunders?

*A.* Yes, I did.

*Q.* Yes is enough.

Did they bring any down? Did they bring any down, Mr. Foster, yes or no.

*A.* No.

*Q.* Did a police officer come down from the Fifth Precinct and say that they didn't have any?

*A.* I don't know what they said.

*Q.* Did a police officer come down to your knowledge from the Fifth Precinct and say they have no reports?

*A.* You have to ask my counselor.

*Q.* You don't know?

*A.* Ask my counselor.

*Mr. Loney:* She is getting into hearsay testimony
through my client as to what the Fifth Precinct
said or didn't say. If she wants to know what the
records did or did not show she can not establish
that through my client and through hearsay.

*Ms. Donahue:* The officer was here and defense
counsel sent him away before I knew what he was
here for.

In her closing statement, the prosecutor argued
to the jury:

Now, I believe there is a lack of evidence on the
defense side. They got on the stand, Mrs. Foster
and her husband, the defendant. They told you
about these complaints they made to the police
department, not complaints they made over the
telephone, but they said they went down there
personally and saw police officers writing out the
information that they gave them.

Have you seen any corroberation [sic] of that
testimony? Have you seen any of the officials from
the police department? Have you seen any records
that were brought in?

And, finally, in rebuttal argument the prose-
cutor stated:

Defense counsel talked about reasonable doubt.
You will recall the Judge will tell you we don't
have to prove it beyond a reasonable doubt, not
even beyond a shadow of a doubt. He [the judge]
will tell you that you have to have a reason for the
doubt before you can call it a reasonable doubt.

* * *

Now, they say the defendant isn't the one who
shot Mr. Saunders. Did you hear any testimony,
that is what you're bound by, the testimony, not
what I say or what Mr. Loney says, and he told
you he was going to prove to you in this case that
the defendant was not the one that shot Mr.
Saunders.

We do not believe that defendant received a fair trial. Due process entitles an accused to the presumption of innocence, while the prosecution carries the burden of proving guilt beyond a reasonable doubt. *In re Winship,* 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). The prosecutor may not suggest in closing argument that defendant must prove something or present a reasonable explanation for damaging evidence as this argument tends to shift the burden of proof. *People v Green,* 131 Mich App 232, 237; 345 NW2d 676 (1983); *People v Dersa,* 42 Mich App 522; 202 NW2d 334 (1972), lv den 388 Mich 803 (1972). The test of prosecutorial misconduct is whether defendant was denied a fair and impartial trial. *People v Bairefoot,* 117 Mich App 225; 323 NW2d 302 (1982). Questions of prosecutorial misconduct are decided on a case by case basis and the reviewing court must examine the pertinent portion of the record and evaluate the prosecutor's remarks in context. *People v Callington,* 123 Mich App 301; 333 NW2d 260 (1983).

In this case, we note that defense counsel failed to object to any of the prosecutor's challenged comments on the grounds here asserted on appeal. Thus, our review is foreclosed unless the prejudicial effect was so great that it could not have been cured by an appropriate instruction and failure to consider the issue would result in a miscarriage of justice. *People v Federico,* 146 Mich App 776; 381 NW2d 819 (1985), lv den 425 Mich 867 (1986).

In this case, we believe that the prosecutor's remarks were improper and that a failure to consider the issue would result in a miscarriage of justice. On direct examination, defendant was attempting to establish the bias of complainant Saunders. The interest or bias of a witness has never been regarded as irrelevant. *People v Field,*

290 Mich 173, 178; 287 NW 422 (1939). Given the importance of the bias theory to the defense, the prosecutor's demand to see the police reports followed by the comment "I don't think he should be allowed to make things up," prejudiced the defense and defendant's ability to undermine the complainant's credibility. Complainant was the sole identification witness at trial. His testimony was the crux of the prosecution's case against defendant. Thus, this was a serious error. Moreover, the prosecutor erroneously injected her personal beliefs regarding defendant's credibility into the proceeding. This constituted testimony by the prosecutor and was improper in tending to shift the burden of proof onto defendant.

The error was compounded on cross-examination, when the prosecutor questioned defendant regarding conversations with his attorney, prompting an objection on the basis of the attorney-client privilege. The attorney-client privilege is fundamental to our system of jurisprudence and the privilege is destroyed if improper inference can be drawn from its exercise. *People v Brocato,* 17 Mich App 277, 303; 169 NW2d 483 (1969). As a result of this exchange, the inference was that defendant's theory was not credible and not to be believed and, that defendant relied upon the attorney-client privilege to suppress evidence. The prosecutor's misconduct during cross-examination of defendant constituted error. Moreover, the prosecutor erred by suggesting that defense counsel committed misconduct by sending a potential witness away from the courtroom. Again, this constituted testimony by the prosecutor suggesting that defendant was concealing evidence of his guilt, thereby tending to shift the burden of proof.

These errors were again compounded by the prosecutor in closing argument. The comments by

the prosecutor suggested that defendant must prove something—namely that he filed reports with the police about the complainant. The remarks chided defendant for the lack of corroborating evidence and for failing to prove or present a reasonable explanation for the complainant's accusations against defendant. Finally, the prosecutor misstated the burden of proof in rebuttal argument in her remark that "we don't have to prove it [defendant's guilt] beyond a reasonable, not even beyond a shadow of a doubt," *In re Winship, supra,* and by stating "you have to have a reason for the doubt before you can call it a reasonable doubt." A requirement that jurors must have a reason to doubt the defendant's guilt has the effect of shifting the burden of proof. *People v Jackson,* 167 Mich App 388, 391; 421 NW2d 697 (1988).

In sum, we find that this series of prosecutorial misconduct could not have been cured by an appropriate instruction and that a failure to consider the issue, in this case, would result in a miscarriage of justice. *Federico, supra.* The prosecutor's misconduct denied defendant his sole defense, that the complainant was not credible and had a motive to falsify his accusations. We therefore cannot find the errors to have been harmless beyond a reasonable doubt. *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709 (1972).

Defendant's convictions are reversed and we remand for a new trial. We find it unnecessary to address defendant's remaining issue concerning his sentencing. We do not retain jurisdiction.

Reversed and remanded.

MAHER, J., concurred.

MICHAEL J. KELLY, P.J. *(dissenting).* I would affirm defendant's convictions. I do not believe

that any prejudicial effect caused by the assistant prosecutor's comments was so great that it could not have been cured by a proper instruction or that failure to review these alleged errors would result in a miscarriage of justice. Accordingly, since defense counsel failed to object at trial, review of these alleged errors should be waived. *People v Duncan,* 402 Mich 1, 15-17; 260 NW2d 58 (1977); *People v Federico,* 146 Mich App 776; 381 NW2d 819 (1985), lv den 425 Mich 867 (1986).

The prosecutor's objections during defense counsel's direct examination of defendant and the prosecutor's cross-examination of defendant do not strike me as so prejudicial as to result in manifest injustice. These comments were merely part of the normal give and take of a criminal jury trial; any impropriety which occurred would have been easily cured by an appropriate instruction upon defense counsel's objection.

Nor were the prosecutor's closing comments regarding defendant's lack of credibility improper. A prosecutor may properly argue that a criminal defendant is not worthy of belief based upon the facts and evidence of the case. *People v Walker,* 167 Mich App 377, 386; 422 NW2d 8 (1988). That is what the prosecutor did here.

With regard to the prosecutor's misexplanation of the reasonable doubt standard, I believe that a careful examination of the prosecution's statement indicates that she merely misspoke and, instead, meant to say that she was not required to prove defendant guilty beyond all doubt or beyond a shadow of a doubt. Such a statement would not have been improper, and would not shift the burden of proof to defendant. See CJI 1:2:23; 1:2:24. In view of the fact that the trial court would later

instruct the jury regarding the reasonable doubt standard, I do not believe that this one slip of the tongue resulted in manifest injustice.

I would affirm.