581 N.W.2d 1 (1997)
PEOPLE of the State of Michigan, Plaintiff-Appellee,
v.
Jerry BASS, Defendant-Appellant.
Docket No. 178342.
Court of Appeals of Michigan.
Submitted March 12, 1997, at Detroit.
Decided April 25, 1997, at 9:25 a.m
Decided on Rehearing July 25, 1997, at 9:10 a.m.
Released for Publication October 28, 1997.
*3 Before WAHLS, P.J., and HOOD and JANSEN, JJ.

*2 ON REHEARING
PER CURIAM.
Defendant was convicted, following a jury trial, of delivery of less than fifty grams of cocaine, M.C.L. § 333.7401(1), (2)(a)(iv); M.S.A. § 14.15(7401)(1)(2)(a)(iv), and possession with intent to deliver less than fifty grams of cocaine, M.C.L. § 333.7401(2)(a)(iv); M.S.A. § 14.15(7401)(2)(a)(iv). Pursuant to an agreement with the prosecutor, defendant pleaded guilty of being an habitual offender, second offense, M.C.L. § 769.10; M.S.A. § 28.1082, and a charge of habitual offender, fourth offense, was dismissed. Defendant was sentenced to eight to twenty years' imprisonment for each of his cocaine convictions. Those sentences were vacated and defendant was sentenced to twelve to thirty years' for habitual offender, second offense. Defendant appeals as of right. We remand.
On December 12, 1993, at approximately 4:30 p.m., Detroit police officers were conducting an undercover "buy and bust" narcotics operation near Cass and West Alexandrine in the City of Detroit. Officer Carl Moore drove to an area in an unmarked car with his partner, Officer Ronald Finnely. The officers saw defendant and Perry Scott, the codefendant,[1] standing on the corner of Cass and West Alexandrine. According to the officers, Scott was "flagging" down passing motorists. Officer Moore got out of the car and approached Scott, who was standing within six feet of defendant. Officer Moore inquired whether Scott had any cocaine for sale, and tendered $20 as prepayment for two "rocks" of cocaine. Scott, in turn, passed the money to defendant, who gave him the cocaine. Scott handed the cocaine to Officer Moore, who then walked back to the car. As Officer Moore approached the car, Officer Finnely observed a white car stop at the corner and defendant hand something to its occupants. Officers Moore and Finnely *4 radioed other officers who were waiting nearby and provided them with descriptions of defendant and Scott so they could make arrests.
Upon receiving descriptions of defendant and Scott, Lieutenant James Lashbrook and Officer Andrew Gammichia drove an unmarked van to the corner, where they were met by Officers Kevin Robinson and Dennis Griffith in a marked patrol car. As they approached, they saw defendant walking away from the corner. Officers Griffith and Gammichia observed defendant discarding packages of suspected cocaine. While Lieutenant Lashbrook collected the discarded packets, Officer Gammichia arrested defendant. Scott was also arrested. The substances sold to Officer Moore and discarded by defendant were tested and found to contain cocaine.
Lieutenant Lashbrook and Officer Robinson departed within minutes of defendant's arrest and proceeded to the corner of Cass and Selden, where the white car had stopped. As Officer Robinson approached the car, he noticed a gun in the console area and several small envelopes that he suspected contained drugs on the floor. The officers arrested the occupants of the car, Leland Simms and Patrick Mitchell. One of the men possessed the $20 dollar bill used by Officer Moore to purchase the cocaine. This ended the officers' versions of the December 12, 1993, events.
Defendant testified on his own behalf and gave a different account of the events that transpired. According to defendant, he was in the area of Cass and Alexandrine with Patrick Mitchell to search for a place to live. After giving change to a man on the street, he entered the Huntington Hotel to inspect a room that was for rent. Finding the room unsatisfactory, defendant prepared to leave the hotel. Defendant was walking toward the hotel doors when a stranger said that the police were outside. Upon leaving the building, defendant parted company with Mitchell.
Defendant testified that, once outside the hotel, Officer Robinson repeatedly slammed him into a tree, causing a laceration on his head. According to defendant, Officer Gammichia told Officer Robinson that they had messed up. Defendant added that, during the ride to the precinct, Lieutenant Lashbrook inquired whether they could "square it" by releasing him. Defendant claimed that he was bleeding profusely during the ride to the station and indicated that he was later taken to Detroit Receiving Hospital for treatment. Although medical records confirmed that defendant was treated in the hospital, a photograph of him taken shortly after he arrived at the precinct merely revealed, in defendant's words, "speckles" or "spots" of blood on his white shirt. Defendant claimed that the photo was altered.
Defendant first argues that he was denied a fair trial by improper remarks by the prosecutor during closing argument. Improper prosecutorial remarks are grounds for reversal where they deny the defendant a fair and impartial trial. People v. Bahoda, 448 Mich. 261, 266-267, 531 N.W.2d 659 (1995); People v. Messenger, 221 Mich.App. 171, 177, 561 N.W.2d 463 (1997). Defendant did not, however, object to any of the remarks he now claims were improper. Appellate review of prosecutorial remarks is generally precluded absent an objection because the trial court was deprived of an opportunity to cure the error. Id. Reversal is warranted in the absence of an objection if a curative instruction could not have eliminated the prejudicial effect of the remarks or where failure to review the issue would result in a miscarriage of justice. Id.
Defendant initially contends that the prosecutor shifted the burden of proof when he argued that the jury should decide whether to believe defendant or the prosecution witnesses and return a verdict consistent with that determination. We disagree. The prosecutor stated, in relevant part:
There really is no room for innocent mistake, I don't believe, looking at the evidence of the case. Either the police officers are lying about this man selling dope or this man is lying about being in the area looking for a hotel room and doing nothing and getting his [sic] banged into the tree. I don't think the evidence shows anything else.

*5 As we talked abut before, and I'm going to talk about now, a criminal case boils down to one thing, reason and common sense. Reason and common sense. That's going to tell you who to believe. That's going to tell you who not to believe. That's going to tell you whether the man's guilty or not guilty.
* * * * * *
If [defendant's] testimony makes sense, those police officers are lying. No other way about it. If the police officers are telling the truth, he's lying.
A prosecutor may not suggest in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because this argument tends to shift the burden of proof. People v. Foster, 175 Mich.App. 311, 317, 437 N.W.2d 395 (1989), disapproved on other grounds in People v. Fields, 450 Mich. 94, 115, n. 24, 538 N.W.2d 356 (1995). A prosecutor may, however, argue that the defendant or another witness is not worthy of belief or is lying. People v. Gilbert, 183 Mich.App. 741, 745-746, 455 N.W.2d 731 (1990).
In support of his claim of prosecutorial misconduct, defendant relies on United States v. Richter, 826 F.2d 206 (C.A.2, 1987). In Richter, the court found that, during cross-examination, the prosecutor's questions compelled the defendant to state that an FBI agent was lying when he testified in a way that conflicted with the defendant's testimony. Id. at 208. The court stated "[d]eterminations of credibility are for the jury ... not for witnesses ... [and therefore] [p]rosecutorial cross-examination which compels a defendant to state that law enforcement officers lied in their testimony is improper." Id. at 208 (citations omitted). The court concluded that reversal was required because the prosecutor compounded the error by calling a rebuttal witness to bolster the FBI agent's credibility and remarking in closing argument that if the defendant was innocent, the FBI agents were lying and committed perjury. Id. at 208-209. The court further noted that the prosecutor misstated the law when he remarked that if the agents were telling the truth, the defendant was guilty. Id. at 209.
In reviewing subsequent cases, it becomes readily apparent that the Second Circuit Court of Appeals has been reluctant to expand its decision in Richter beyond the narrow and specific facts of that case. United States v. Gaind, 31 F.3d 73 (C.A.2, 1994); United States v. Weiss, 930 F.2d 185 (C.A.2, 1991), cert den 502 U.S. 842, 112 S.Ct. 133, 116 L.Ed.2d 100 (1991); United States v. Durrani, 835 F.2d 410 (C.A.2, 1987). The statement in Gaind, supra at 77, that relief will not be warranted unless the defendant can demonstrate the same "starkly offensive prosecutorial delinquencies" found in Richter, essentially limits Richter to its facts.
In any event, unlike Richter, supra, defendant's argument is premised exclusively on improper comments during closing argument. Other federal courts have considered this issue with varying results. In United States v. Vargas, 583 F.2d 380, 386-387 (C.A.7, 1978), the Seventh Circuit Court of Appeals held that the prosecutor's equating of a not guilty verdict with a finding that government agents were lying and a guilty verdict with their telling the truth was improper because it distorted the burden of proof by suggesting what the jury must find to reach a verdict. The court reasoned that, even assuming that there were unavoidable contradictions in the respective testimony, it did not follow that, in order to acquit, the jury must believe that the government agents lied. The court indicated that credibility determinations are but one factor in determining whether evidence was sufficient. In effect, the prosecutor's comments left no room for the jury to "return a verdict of not guilty because the evidence might not be sufficient to convict defendant beyond reasonable doubt." Id. at 387.
In cases decided after Vargas, courts have concluded that similar remarks did not necessitate reversal. For example, in United States v. Diaz-Carreon, 915 F.2d 951, 956 (C.A.5, 1990), the Fifth Circuit Court of Appeals agreed with the Vargas court that error occurs when a prosecutor argues that an acquittal requires its witnesses to be disbelieved and the defense witnesses to be believed. *6 The Fifth Circuit Court of Appeals, however, distinguished Vargas by considering the argument in context to determine the prejudicial effect of the comment. Id. at 957. The Diaz-Carreon prosecutor stated that the jury would either believe the defendant and not everyone else, or believe the other witnesses and not the defendant. Id. at 956. The court noted that the prosecutor's comments followed defense counsel's attack on the credibility of the prosecution witnesses and properly stressed that witness credibility was a crucial issue in the case. The court held that the comments were permissible because the prosecutor never informed the jurors of what they must find to reach a verdict. In so holding, the court emphasized that the prosecutor merely intended to inform the jurors that they were likely to believe one side's witnesses or that the government witnesses were the most believable. Id. at 957.
Also, in United States v. Marshall, 75 F.3d 1097 (C.A.7, 1996), the Seventh Circuit Court of Appeals held that the prosecutor's comments did not deny the defendant a fair trial. The court noted that the prosecutor did not present the jury with "stark, bright-line, and absolute alternatives that might serve to distort the burden of proof." Id. at 1108. Rather, the prosecutor stated that the jury should find the defendant not guilty if it believed the government agent was lying, but did not exclude other ways of reaching the same conclusion. Id.
In the instant case, the conduct of the prosecutor was not identical to the "starkly offensive" conduct of the prosecutors in Richter, supra, or Vargas, supra. The statements made during closing argument did not expressly state that a verdict for the defendant would require a finding that all of the government's witnesses were lying. The prosecutor focused on the credibility issue and repeatedly noted that because the testimony could not be reconciled, either the police officers or defendant was lying. The prosecutor did not inform the jurors of what they must find to convict or acquit. Nor did the prosecutor exclude other ways to reach a verdict. We therefore conclude that the prosecutor's remarks do not require reversal.
Defendant also contends that the prosecutor made an improper civic-duty argument when he urged the jury to "do the right thing" and "do justice." The prosecutor remarked as follows:
Ladies and gentlemen, when you're deciding this case, you're not supposed to decide upon whether you like this man, whether you feel sorry for this man or whether you hate this man. It has nothing to do with this case. This case is about doing the right thing. About looking at the evidence. About deciding what evidence to believe. About trying to do justice. About trying to do justice. [Emphasis added.]
Generally, prosecutors are accorded great latitude regarding their arguments and conduct. Bahoda, supra at 282, 531 N.W.2d 659. Prosecutors, however, should not resort to civic duty arguments that appeal to the fears and prejudices of jurors. Such comments during closing argument will be reviewed in context to determine whether they constitute error requiring reversal. Id.
Having reviewed the remarks in context, we conclude that they did not deny defendant a fair and impartial trial. The remarks "do justice" and "do the right thing" occurred at the end of a lengthy discussion of the evidence and were followed by further comments on the evidence. The remarks were isolated, and the prosecutor's argument was otherwise proper.[2] Moreover, an objection and curative instruction could have eliminated any prejudicial effect. Messenger, supra.
Defendant also raises several claims of ineffective assistance of counsel. Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. People v. Effinger, 212 Mich.App. 67, 69, 536 N.W.2d 809 (1995). To establish ineffective assistance of counsel, a defendant must show that counsel's performance was below an objective standard of reasonableness *7 under prevailing norms and that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. Id.
Defendant argues that he was denied the effective assistance of counsel by trial counsel's failure to object during the prosecutor's closing argument. As discussed previously, defendant was not denied a fair and impartial trial by the prosecutor's conduct. Therefore, defense counsel's failure to object to those remarks did not affect the outcome of the trial.
Defendant also argues that trial counsel was ineffective for failing to obtain the transcript of Scott's trial in order to use the police officers' prior testimony for impeachment purposes, and for failing to call Scott and Mitchell as witnesses at defendant's trial.
Ineffective assistance of counsel can take the form of a failure to call witnesses or present other evidence only if the failure deprives the defendant of a substantial defense. People v. Hoyt, 185 Mich.App. 531, 537-538, 462 N.W.2d 793 (1990); People v. Julian, 171 Mich.App. 153, 158-159, 429 N.W.2d 615 (1988); People v. Wilson, 159 Mich.App. 345, 354, 406 N.W.2d 294 (1987). A defense is substantial if it might have made a difference in the outcome of the trial. People v. Kelly, 186 Mich.App. 524, 526, 465 N.W.2d 569 (1990). Decisions concerning which witnesses to call, what evidence to present, or the questioning of witnesses are considered part of trial strategy. Julian, supra. In order to overcome the presumption of sound trial strategy, the defendant must show that his counsel's failure to prepare for trial resulted in counsel's ignorance of, and hence failure to present, valuable evidence that would have substantially benefited the defendant. People v. Caballero, 184 Mich.App. 636, 640, 642, 459 N.W.2d 80 (1990). This Court will not second-guess defense counsel's trial strategy. People v. Barnett, 163 Mich.App. 331, 338, 414 N.W.2d 378 (1987).
In support of his claim that trial counsel should have had a transcript of Scott's trial prepared so that the police officers' testimony could be used for impeachment purposes, defendant cites two instances where the testimony was potentially inconsistent. The first instance occurred when Officer Moore testified at Scott's trial that he saw a car stop in response to Scott's motioning, while Officer Finnely testified that he did not see a car stop. The witnesses, however, did not testify with respect to this issue at defendant's trial. The second instance occurred when Officer Moore testified at Scott's trial that Officer Finnely provided a description of the suspects to an arrest team, but at defendant's trial, he testified that he provided the description.
Having reviewed the testimony, we find that this claim is without merit. Contrary to defendant's assertion, Scott was not acquitted on the basis of inconsistencies in the officers' testimony. While the court that tried Scott noted an inconsistency in the testimony, it ultimately found Scott not guilty because it questioned whether he was involved in the drug deal. Given the police officers' firm identification testimony and evidence that cocaine was discarded by defendant, we find that trial counsel's failure to impeach other portions of their testimony did not deprive defendant of the effective assistance of counsel where knowledge by the jury of the minor discrepancies in the officers' testimony would not have affected the outcome of the trial.
Defendant also asserts that trial counsel should have called Scott and Mitchell as witnesses at his trial. Here, trial counsel was appointed to represent defendant at his trial and during his testimony at Scott's trial. At Scott's trial, Mitchell's testimony paralleled that provided by defendant. Mitchell testified that he and defendant rode on the bus to the area of Cass and Alexandrine and looked for a hotel room. After leaving the hotel, they walked in different directions. Mitchell obtained a ride from Simms and was arrested when the police found his heroin after stopping the car in which he was the passenger. Scott testified that he did not know defendant, did not see anyone selling drugs, and was not himself selling drugs. He also stated that he was slammed against a wall and arrested by the police officers who got out of the van.
*8 Trial counsel was present for defendant's testimony on December 17, 1993, but was not present when Scott and Mitchell testified on December 22, 1993. Trial counsel, nevertheless, was aware that Scott and Mitchell were potential witnesses because defendant testified at Scott's trial. Had the witnesses testified at defendant's trial, they may have aided in his defense because Mitchell would have corroborated defendant's testimony and Scott would have confirmed that he had no connection with defendant. Given the conflicting version of events presented by the officers and defendant, the additional testimony in support of defendant's story may well have made a difference in the outcome at trial. However, because the decision to call witnesses is a matter of trial strategy, we cannot determine on the basis of the record before us whether trial counsel had a reason for not calling these witnesses. We therefore remand for an evidentiary hearing at which trial counsel can explain her reasons for not calling the witnesses. People v. Ginther, 390 Mich. 436, 212 N.W.2d 922 (1973).
Defendant further argues that he is entitled to receive a transcript of the jury voir dire because the denial of a transcript violates his right to equal protection and to the effective assistance of counsel. Although defendant failed to raise this issue below, we will consider it because it involves a constitutional issue. People v. Zinn, 217 Mich.App. 340, 344, 551 N.W.2d 704 (1996). Constitutional issues are reviewed de novo on appeal. People v. Houstina, 216 Mich.App. 70, 73, 549 N.W.2d 11 (1996).
Defendant first contends that the court rules restricting the ability of an indigent defendant to obtain a transcript of a voir dire proceeding are unconstitutional. MCR 6.425(F)(2)(a)(i) directs that in the order appointing a lawyer for an indigent defendant, the trial court must direct the court reporter to prepare and file
the trial or plea proceeding transcript, excluding the transcript of the jury voir dire unless the defendant challenged the jury array, exhausted all peremptory challenges, was sentenced to serve a term of life imprisonment without the possibility of parole, or shows good cause.
Under MCR 6.433(A), an indigent defendant may request transcripts, and the court must order the preparation of transcripts unless they have already been ordered pursuant to MCR 6.425(F)(2). However, consistent with MCR 6.425, MCR 6.433(D) provides that
[t]he court shall not order the transcript of the jury voir dire unless the defendant challenged the jury array, exhausted all peremptory challenges, was sentenced to serve a term of life imprisonment without the possibility of parole, or shows good cause.
Defendant argues that the requirement that he demonstrate good cause for the transcript violates his right to equal protection and the effective assistance of counsel.
In Griffin v. Illinois, 351 U.S. 12, 17-19, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the Supreme Court held that, to satisfy the commands of the Equal Protection Clause, states may not condition the exercise of basic trial and appeal rights on a defendant's ability to pay for such rights. Id. at 19, 76 S.Ct. 585. Griffin and its progeny command that a state must "provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners." Britt v. North Carolina, 404 U.S. 226, 227, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971). In the context of providing transcripts to indigent defendants, the Supreme Court explained in Britt:
In prior cases involving an indigent defendant's claim of right to a free transcript, this Court has identified two factors that are relevant to the determination of need: (1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript. [Id.]

In Draper v. Washington, 372 U.S. 487, 497, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963), the Supreme Court explained that it is only necessary that the state furnish a "record of sufficient completeness" for adequate consideration of defendant's claims of error. In Mayer v. Chicago, 404 U.S. 189, 195, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971), the Supreme *9 Court held that, while a full transcript is not automatically required, once an indigent defendant makes out "a colorable need for a complete transcript," the burden is on the State to show that a portion of the transcript or an "alternative" will suffice. See, also, United States v. Devlin, 13 F.3d 1361, 1363-1364 (C.A.9, 1994).
In this case, we find that defendant has made no effort to demonstrate either a "colorable need" or "good cause" for a transcript of the voir dire proceedings. Under identical circumstances, the courts of other jurisdictions have generally held that Griffin and its progeny do not require the production of the voir dire transcript because it is not necessary to review the issues raised on appeal. See Johnson v. Arkansas, 258 Ark. 560, 528 S.W.2d 367 (1975); Goins v. Meade, 528 S.W.2d 680, 681-684 (Ky., 1975), cert. den. 424 U.S. 972, 96 S.Ct. 1474, 47 L.Ed.2d 741 (1976); State v. Robinson, 302 So.2d 270, 272 (La., 1974); Green v. Tennessee, 1 Tenn.Crim.App. 719, 721-724, 450 S.W.2d 27 (1969). See also People v. Hill, 67 Cal.2d 105, 60 Cal.Rptr. 234, 429 P.2d 586 (1967), cert. den. 389 U.S. 1009, 88 S.Ct. 572, 19 L.Ed.2d 607 (1967). The Supreme Court of Ohio, however, reached the opposite result in State ex rel Seigler v. Rone, 42 Ohio St.2d 361, 328 N.E.2d 811 (1975).
Like the majority of courts that have considered this issue, we conclude that defendant's constitutional right to equal protection does not entitle him to the production of a transcript of the voir dire proceedings. Pursuant to Draper, supra, the state is only required to provide transcripts of the portion of the proceedings germane to consideration of the issues raised on appeal. Here, defendant raises no issue on appeal that requires review of the voir dire transcript. We therefore conclude that the court rules governing the production of the voir dire transcript do not violate defendant's right to equal protection.
More troubling, however, is defendant's argument that MCR 6.425 is unconstitutional because it violates his right to effective assistance of counsel. Where a state grants criminal defendants an appeal as of right, it must also provide indigent defendants with an attorney to represent them on appeal. Douglas v. California, 372 U.S. 353, 358, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). Under the Due Process Clause of the Fourteenth amendment, a criminal defendant is entitled to the effective assistance of counsel in his first appeal of right. Evitts v. Lucey, 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).
The Michigan Legislature established the Appellate Defender Commission and assigned it the responsibility of developing a system of indigent appellate defense services. M.C.L. § 780.712; M.S.A. § 28.1114(102), M.C.L. § 780.713; M.S.A. § 28.1114(103). The commission's regulations for the appointment of appellate counsel for indigent defendants and minimum standards for services provided by appointed counsel were approved by the Michigan Supreme Court in 1981. Administrative Order No. 1981-7, 412 Mich. lxv (1981). The Court affirmed its order in 1985. Administrative Order No.1985-3, 421 Mich. lxvii (1985). Pursuant to the standards and directives of appellate counsel, counsel must request and review all transcripts and lower court records and assert meritorious claims based on the lower court record.
In Hardy v. United States, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964), the Court held that, in the federal system, where a defendant has an appeal of right and Congress has enacted statutes to buttress that right, the entire transcript must be produced when appointed appellate counsel did not serve as trial counsel. The Court reasoned as follows:

But when, as here, new counsel represents the indigent on appeal, how can he faithfully discharge the obligation which the court has placed on him unless he can read the entire transcript? His duty may possibly not be discharged if he is allowed less than that. For Rule 52(b) of the Federal Rules of Criminal Procedure provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The right to notice "plain errors or defects" is illusory if no transcript is available at least to one whose lawyer on *10 appeal enters the case after the trial is ended. [Id. at 280, 84 S.Ct. 424 (emphasis added).]
The Hardy Court held that, under the circumstances of the case, the defendant was entitled to transcripts of the court's charge to the jury and the testimony presented by the prosecution and the defense. Id. at 282, 84 S.Ct. 424. The Court relied on federal law and explicitly declined to consider whether a complete transcript was constitutionally required. Id.
We find that the remarks of the Hardy Court are equally applicable to the circumstances of this case. The standards for appointed appellate counsel require that counsel assert claims of error that are supported by the record and possess arguable legal merit. In order to faithfully discharge the duties imposed by the Appellate Defender Commission and the Supreme Court, counsel must have access to transcripts of all the proceedings so that all issues of legal merit can be raised. Although appellate counsel could contact trial counsel and inquire about voir dire, information obtained from trial counsel is not a substitute for a transcript because trial counsel's memory may be faulty, trial counsel may not be aware that an error occurred during voir dire, id. at 280, n. 3, 84 S.Ct. 424, or trial counsel may be the target of the defendant's claim of error. We therefore conclude that a transcript of voir dire must be provided in all cases where appointed appellate counsel was not the indigent defendant's trial counsel. Accordingly, in this case, we find that defendant is entitled to a transcript of the voir dire testimony, to determine if any justifiable claims of error occurred during the voir dire.
Defendant also argues that his twelve-to thirty-year sentence for habitual offender, second offense, is disproportionate. We disagree. This Court's review of an habitual offender sentence is limited to considering whether the sentence violates the principle of proportionality. People v. Gatewood (On Remand), 216 Mich.App. 559, 560, 550 N.W.2d 265 (1996). The principle of proportionality requires that the sentence imposed be proportionate to the seriousness of the circumstances surrounding the offense and the offender. People v. Milbourn, 435 Mich. 630, 636, 461 N.W.2d 1 (1990).
We find that defendant's twelve-to thirty-year sentence is proportionate. Contrary to defendant's contention, his twelve prior felony convictions, even if property offenses, place him among more serious offenders. As the trial court aptly noted when sentencing defendant, defendant clearly does not intend to live by the rules of society. Given defendant's lengthy criminal record and his conviction of delivery of cocaine offenses, defendant's twelve-to thirty-year sentence is proportionate to the offense and the offender.
To the extent that defendant argues that he is entitled to be resentenced because the trial court misapplied or misunderstood the law when it determined that the habitual offender statute increased the upper end of the guidelines range by fifty percent, this challenge does not state a cognizable claim for relief. The Michigan Supreme Court recently recognized that "[t]here is no juridical basis for claims of error based on alleged misinterpretation of the guidelines, instructions regarding how the guidelines should be applied, or misapplication of guideline variables." People v. Mitchell, 454 Mich. 145, 176-177, 560 N.W.2d 600 (1997). "[A]pplication of the guidelines states a cognizable claim on appeal only where (1) a factual predicate is wholly unsupported, (2) a factual predicate is materially false, and (3) the sentence is disproportionate." Id. at 177, 560 N.W.2d 600 (emphasis added). We conclude that defendant's sentence is proportionate and that Mitchell therefore precludes this claim.
Defendant also claims that he is entitled to a new trial based on newly discovered evidence. Defendant relies on an inter-office police memorandum that defendant obtained after his conviction, wherein two officers acknowledged that defendant had sustained a "minor" or "small" cut on his right ear and that defendant should be taken to the hospital. At trial, one officer in question testified that he did not "recall" an injury to defendant's head. When questioned regarding whether officers were instructed to take *11 defendant to the hospital, a second officer responded "I don't believe so." When asked, "[a]re you aware of a visit to the Detroit Receiving Hospital by [defendant]," the officer replied, "I do not have that information."
Before a new trial is warranted, a defendant must demonstrate that the evidence itself, not merely its materiality (1) is newly discovered, (2) is not merely cumulative, (3) probably would have caused a different result, and (4) was not discoverable and producible at trial with reasonable diligence. People v. Barbara, 400 Mich. 352, 362-363, 255 N.W.2d 171 (1977); People v. Miller (After Remand), 211 Mich.App. 30, 46-47, 535 N.W.2d 518 (1995). Newly discovered evidence is not grounds for a new trial where it would merely be used for impeachment purposes. People v. Davis, 199 Mich.App. 502, 516, 503 N.W.2d 457 (1993); People v. Stricklin, 162 Mich.App. 623, 631-632, 413 N.W.2d 457 (1987). Correspondingly, newly discovered evidence which relates only to a witness' credibility is not sufficient to require a new trial. People v. McWhorter, 150 Mich.App. 826, 835, 389 N.W.2d 499 (1986); People v. Boynton, 46 Mich.App. 748, 750, 208 N.W.2d 523 (1973). The appellant has the burden of showing that the evidence is both newly-discovered and material. People v. Van Camp, 356 Mich. 593, 602, 97 N.W.2d 726 (1959); People v. Williams, 118 Mich.App. 266, 271, 324 N.W.2d 599 (1982).
We have examined the record and conclude that defendant has not met his burden. There has been no showing that this evidence was not available and could not have been discovered and produced had defendant exercised reasonable due diligence at the time of trial. Defendant does not allege that the police department, prosecution, or other entity withheld the memorandum from discovery. Rather, defendant simply claims that he "did not know until long after trial that an internal police memorandum even existed." As there is no explanation for defendant's failure to take any reasonable action at the time of trial, no relief is justified. Of more importance, we are not convinced that the memorandum, acknowledging that defendant, in fact, did sustain a minor cut to his ear, likely would have rendered a different result on retrial. At best, under these circumstances, the evidence relates to the particular officers' credibility, which is insufficient grounds for granting a new trial.[3] We therefore conclude that defendant is not entitled to a new trial on the basis of newly discovered evidence.
We remand for further proceedings in accordance with this opinion. We do not retain jurisdiction.
NOTES
[1] Codefendant, Perry Scott, was charged and acquitted in a separate trial.
[2] We note that defendant cited a New York appellate court holding that suggesting that jurors "do the right thing" was improper. People v. Kirkland, 199 A.D.2d 54, 605 N.Y.S.2d 27 (1993). However, that court ultimately concluded that the comment and other improper remarks were not so prejudicial as to deny the defendant a fair trial. Id.
[3] We note that the officers respectively testified that they did not "recall," "did not have [the] information," or "did not believe so." It would be a troublesome task to conclude from their uncertain testimony that the officers were deliberately "lying" as defendant would have us to do.