**UNITED STATES of America**

v.

**Arun GAIND, Defendant.**

**No. 91 Cr 859 (VLB).**

United States District Court,
S.D. New York.

Sept. 28, 1993.

Marjorie Miller, Asst. U.S. Atty., White Plains, NY, for U.S.

Paula Schwartz Frome, Kase & Drucker, Garden City, NY, for defendant.

### MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

I

Defendant Arun Gaind was sentenced on June 11, 1993 to thirty-three (33) months for false statements contrary to 18 U.S.C. § 1001 and related crimes in connection with contracts for testing material for the Environmental Protection Agency. The case involved large-scale re-dating of test reports

relating to samples of potentially polluted material submitted to Mr. Gaind's firm in order to permit the EPA to prepare for possible litigation. The "time travel" of the dates of the reports caused them to appear timely when in fact they were not.

The principal issue at the trial was the extent of Mr. Gaind's knowledge of and responsibility for this activity. Mr. Gaind and various former employees testified and gave contradictory versions of the events involved. The credibility of these clashing witnesses and the implications of the facts to which they testified were the central issues in the trial.

The testimony at trial indicated that Mr. Gaind was an extremely energetic, highly motivated hands-on chief executive officer who kept informed of everything of significance which was going in his organization, and who tolerated very little opposition to or evasion of his directives.[1]

The distinct impression was created by Mr. Gaind's testimony and demeanor that it was his view at the time of the events involved and at the time of his testimony, if not necessarily at the time of his sentence, that the end justifies the means rather than the more accurate one that the means chosen determine the end achieved.

Mr. Gaind has moved through his counsel for bail pending appeal on the grounds that a substantial issue is raised by events at the trial, although no relevant objections by defense counsel were ever made and overruled:

(a) questions put by the United States Attorney without objection on redirect examination of former employees of Mr. Gaind's company, concerning promises to tell the truth contained in cooperation and nonprosecution agreements, and

(b) certain questions put to Mr. Gaind when he took the stand as to whether such witnesses were mistaken.

No objections were made at all to the disclosures of the cooperation and plea agreement. All objections made to the questions concerning whether the prosecution witnesses were mistaken were sustained.

Mr. Gaind argues that the prosecution's conduct may constitute plain error of a prejudicial nature. I disagree and deny the application for bail pending appeal.

## II

The credibility of cooperating defendants and persons promised immunity is inherently problematic. Such persons by implication did or may have engaged in improper behavior. They may also have an incentive to report others, whether guilty or not, as a way of securing favorable treatment for themselves under U.S. Sentencing Guidelines § 5K1.1 or by virtue of being given immunity in return for testimony.[2] Excessive reliance on such sources of information rather than witnesses willing to testify of their own accord without guarantees, or additional investigation by law enforcement authorities, presents serious questions for criminal justice.

Juries as well as jurists are aware of the problematic nature of much accomplice testimony and often view it with a jaundiced eye, sometimes appropriately so. To eliminate mystery in the minds of factfinders concerning the nature of arrangements with such witnesses, the prosecution must and does

---

1. These characteristics which led Mr. Gaind astray may also become assets to society if he fully realizes the scope of his error and that it penetrated his entire outlook, which it was obvious focused on external results without regard to how they were achieved.

   Because of his potential for rehabilitation after thirty-three months of incarceration to which I sentenced him, and because the destruction of his business as a result of discovery of his crimes achieved many of the purposes of sentencing under 18 U.S.C. § 3553, I departed downward from the Sentencing Guidelines pursuant to that section and fixed the term of imprisonment at that level.

2. Indeed, some informants, cooperating defendants and similar persons have committed serious crimes while at liberty because of continuing cooperation. See generally *Guccione v. United States*, 847 F.2d 1031, 1035 (2d Cir.1988), *cert. denied*, 493 U.S. 1020, 110 S.Ct. 719, 107 L.Ed.2d 739; *Commonwealth v. Long*, 837 F.2d 727 (6th Cir.1988); *United States v. Fallon*, 776 F.2d 727, 733–34 (7th Cir.1985); *United States v. Twigg*, 588 F.2d 373, 380–82 (3d Cir.1978); *United States v. Black*, 776 F.2d 1321 (6th Cir.1985); Note, 72 Cornell L.Rev. 800 (May 1987).

disclose them. In some instances, prosecutors use commitments to tell the truth to rehabilitate or buttress the credibility of such witnesses when attacked at trial.

Because such commitments to truthfulness may in certain circumstances have the effect of enhancing the credibility of a witness before a factfinder, they cannot properly be set forth unless the witness' credibility is challenged. *United States v. Cosentino*, 844 F.2d 30, 33 (2d Cir.1988), *cert. denied*, 488 U.S. 923, 109 S.Ct. 303, 102 L.Ed.2d 322. However, where the witness' credibility is already in issue, the prosecution can present the information in the first instance because no purpose is served by requiring the prosecution to wait. *Id.; United States v. Arroyo–Angulo*, 580 F.2d 1137, 1146 (2d Cir.), *cert. denied*, 439 U.S. 913, 99 S.Ct. 285, 58 L.Ed.2d 260 (1978); *United States v. Jones*, 763 F.2d 518, 522 (2d Cir.1985), *cert. denied*, 474 U.S. 981, 106 S.Ct. 386, 88 L.Ed.2d 339. In the present case, the credibility of the Government witnesses was contested and very much in issue throughout the entire litigation. Thus effective and astute defense trial counsel may have felt that an objection would serve no purpose. Defense counsel may also have felt that although a commitment to truthfulness may strengthen credibility, it can work in reverse if the factfinder reads the commitment as one to tell the truth as the prosecutor deems the truth to be. See *United States v. Barnes*, 604 F.2d 121, 151 (2d Cir. 1979), *cert. denied*, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980). This is particularly likely during an era when public awareness of the risks of reliance on truthfulness of cooperating witnesses is particularly widespread.[3]

To permit defense counsel to make the judgment call as to whether the prosecution should be permitted to bring out the plea and immunity agreements including the truth-telling provisions was neither plausibly harmful nor error under the circumstances of this case.

## III

The prosecution also asked Mr. Gaind whether prosecution witnesses who formerly worked for Mr. Gaind had been mistaken or lying. Were this a situation in which the weight of the credibility of government agents, or an entire government agency, were put into the balance as against the believability of a defendant, I would be required to sustain a *sua sponte* objection as part of my supervision of the trial. *United States v. Richter*, 826 F.2d 206, 209 (2d Cir. 1987).

In this instance Mr. Gaind and his former employees occupied a level playing field with respect to credibility; all were actually or allegedly involved in varying degrees of improper conduct. None was a government agent.

Asking Mr. Gaind whether these former employees were wrong or lying is a two-edged sword with hazards to both parties. Consequently, I permitted defense counsel to make the choice as to whether and when the prosecutor should be permitted to pursue such a line of questioning in this case.

The questions put to Mr. Gaind permitted him, if able to do so, to explain in the dramatic context of cross-examination, why the witnesses against him were not credible. This opportunity to rebut directly any inference that the prosecution witnesses must have been testifying accurately has advantages akin to the opportunity to explain a prior inconsistent statement before extrinsic evidence of it is offered. See Fed.R.Evid. 613(b).

Defense counsel chose to permit some of these questions to be asked without objection, but objected in other instances. In the latter instances I sustained the objection. It was obvious to me that defense counsel was fully aware of the advantages and disadvantages of such questions and I chose not to preempt his judgment when he allowed some of them to be put.

Mr. Gaind, never at a loss for words, explained eloquently throughout his direct testimony why he believed that the various witnesses against him had been wrong or had motives to blame him for what he regarded as their own errors in engaging in the time

---

**3.** This would obviate any risk that it would boomerang if raised directly by defense counsel.

travel. When the prosecutor asked Mr. Gaind while on cross-examination whether these witnesses were wrong or lying, she was merely revisiting a contention Mr. Gaind had already articulated in numerous ways. There is no possibility that these questions altered the outcome of the trial.

## IV

Mr. Gaind further argues in his appellate brief that his acquittal on one count (8) is inconsistent with a conviction on another count (22); even assuming that the verdicts on those two counts were inconsistent, it would not affect his sentence which also rests on 13 other counts unaffected by this argument.

I find no error in the conduct of the trial, and I also conclude that the events discussed in Mr. Gaind's application were harmless beyond a reasonable doubt.