**UNITED STATES of America, Appellee,**

v.

**Arun GAIND, Defendant–Appellant.**

**No. 475, Docket 93–1425.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 15, 1993.

Decided Aug. 3, 1994.

Paula Schwartz Frome, Garden City, NY (James O. Druker, Kase & Druker, of counsel), for defendant-appellant.

Marjorie Miller, Asst. U.S. Atty. for the S.D. of New York, New York City (Mary Jo White, U.S. Atty. for the S.D. of New York, Lisa Margaret Smith, Paul G. Gardephe, Asst. U.S. Attys. for the S.D. of New York, of counsel), for appellee.

Before: MINER, MAHONEY, and HEANEY,* Circuit Judges.

MAHONEY, Circuit Judge:

Defendant–Appellant Arun Gaind appeals from a judgment entered June 14, 1993 after a jury trial in the United States District Court for the Southern District of New York, Vincent L. Broderick, *Judge,* that convicted Gaind of: one count of conspiracy to submit false statements to the Environmental Protection Agency (the "EPA"), to commit mail fraud, and to defraud the United States and an agency thereof in violation of 18 U.S.C. §§ 371, 1001, and 1341; one count of conspiracy to submit false statements to the EPA and to defraud the United States and an agency thereof in violation of 18 U.S.C. §§ 371 and 1001; seventeen counts of submitting false statements to the EPA in viola-

* The Honorable Gerald W. Heaney, United States Circuit Judge for the Eighth Circuit, sitting by

tion of 18 U.S.C. §§ 1001 and 2; two counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 2; and one count of committing perjury before a grand jury in violation of 18 U.S.C. § 1623. The court sentenced Gaind to thirty-three months imprisonment, three years of supervised release, $1,100 in special assessments, and restitution to the EPA of $511,263.68.

On this appeal, Gaind raises three challenges to his conviction. He contends that: (a) the prosecutor improperly asked Gaind, during cross-examination, whether other witnesses whose testimony differed from his were "mistaken" or "lying;" (b) by eliciting testimony concerning the "truth-telling" provisions of nonprosecution and cooperation agreements entered into between the government and several government witnesses (the "Truth-telling Provisions"), the government improperly bolstered the testimony of government witnesses before their credibility had been challenged; and (c) his conviction on count twenty-two of the indictment should be reversed because it is logically inconsistent with the jury's verdict of acquittal on count eight of the indictment.

We conclude that neither the government's cross-examination nor the elicitation of testimony concerning the Truth-telling Provisions amounted to "plain error." We also reject Gaind's claim that his conviction on count twenty-two and his acquittal on count eight are inconsistent, concluding that (1) the two verdicts are not logically inconsistent, and (2) in any event, such an inconsistency would not provide a basis for challenging the conviction.

Accordingly, we affirm the judgment of conviction.

## Background

From 1986 through 1988, Arun Gaind was the president of Nanco Environmental Services, Inc. also known as Nanco Laboratories, Inc. ("Nanco"), a testing laboratory in Dutchess County, New York. The charges against Gaind center on false statements sub-

designation.

mitted to the EPA by Nanco during that period.

Commencing in March 1985 and continuing through 1988, Nanco entered into and performed a series of contracts with the EPA for the environmental analysis of soil and water samples taken from Superfund sites throughout the United States by the EPA. Because of the volatility of the substances being tested, the contracts provided for time limits, ranging from seven days for volatile water samples and ten days for volatile soil samples to forty days for semi-volatile samples, within which the testing had to be completed. The contracts required Nanco to report the results of its analyses to the EPA on a form provided by the EPA setting forth, *inter alia*, the date on which each sample was analyzed. The gas chromatograph/mass spectrometer instruments used by Nanco to test the samples were connected to computer data systems equipped with internal clocks so that the time and date on the internal clock at the time the testing was completed would appear on the printout of the analysis. The computer system was also designed to keep a record of the testing, referred to as an archive, which would provide evidence of the actual testing performed. Neither of these systems was foolproof, however, because the archiving system could be turned off, and the internal clock could also be changed, by the person conducting the test.

It is undisputed that in the fall of 1986, Nanco became unable to complete the testing of volatile samples in accordance with the prescribed schedule. In order to be paid by the EPA without incurring the monetary penalties contractually provided for tardy performance, Nanco engaged in an elaborate scheme to "backdate" the reports submitted to the EPA in order to falsely represent that the tests had been completed within the specified periods. This scheme involved, *inter alia*, the resetting of the computer system's internal clocks and manually manipulating the archive numbering system so as to provide information consistent with the tests having been completed within the appropriate periods.

Sometime after October 1988, the EPA became suspicious about the tests being conducted by Nanco and arranged for an outside laboratory to audit Nanco's work. The outside audit furthered the EPA's suspicions concerning the deficiencies in Nanco's performance. Subsequently, a grand jury in the Southern District of New York commenced an investigation to determine whether Nanco had submitted false reports to the EPA. Gaind testified under oath before that grand jury on August 1, 1991 and denied "ever direct[ing] anyone to set the time back on computers." The grand jury subsequently returned a forty-count indictment against Gaind, charging him with the previously summarized charges of which he was convicted, as well as nine counts of submitting false statements to the EPA, five counts of mail fraud, and three counts of tampering with witnesses, as to all of which he was acquitted.

Gaind conceded at trial, as he does on this appeal, that the reports submitted by Nanco to the EPA were backdated to make it appear that samples were analyzed during the requisite holding times. The central issue at trial was the extent of Gaind's knowledge of the backdating. *See United States v. Gaind*, 832 F.Supp. 740, 741 (S.D.N.Y.1993) (district court order denying Gaind's application for bail pending appeal).

Eleven former employees of Nanco testified for the government against Gaind. Many of these witnesses testified that backdating was discussed with Gaind, and that the backdating proceeded pursuant to Gaind's instructions. For example, George Odell and Sohail Jahani,[1] two former Nanco employees, testified that the backdating was done pursuant to Gaind's direction. Odell testified that after the backdating practice became prevalent, he again discussed the situation with Gaind, who professed his

---

1. Jahani was originally charged in the same indictment and with the same offenses as Gaind. On May 4, 1992, Jahani pled guilty to count one of the indictment, which charged a conspiracy to submit false statements to the EPA, to commit mail fraud, and to defraud the United States and an agency thereof. On December 8, 1992, after the conclusion of Gaind's trial, the court sentenced Jahani principally to three years of probation, departing downward from the applicable guideline range pursuant to the government's motion.

awareness of the situation but stated that the backdating would have to continue until Nanco was up to date in its testing. Kathleen McKeever, another former Nanco employee, testified that in October 1988, Gaind personally instructed several Nanco employees to submit backdated reports to the EPA concerning 250 samples, known collectively as EPA Case No. 3975–E. Gaind testified in his own defense, and called four witnesses. As we have noted, the jury found Gaind guilty on twenty-two of the forty counts with which he was charged.

In sentencing Gaind to thirty-three months imprisonment, the district court departed downward from the applicable guideline range of 41–51 months, primarily because of the destruction of Gaind's testing business as a result of his criminal prosecution. *See United States v. Gaind*, 829 F.Supp. 669, 670–71 (S.D.N.Y.1993) (memorandum explaining downward departure). This appeal followed. Gaind applied to the district court to be released on bail pending appeal, and the district court denied the application. *See United States v. Gaind*, 832 F.Supp. 740 (S.D.N.Y.1993).

## Discussion

■ At the outset, we note that Gaind did not present either his claim based upon the prosecutor's cross-examination[2] or his claim based upon the introduction of testimony concerning the Truth-telling Provisions of the Cooperation Agreements to the trial court. Accordingly, these claims are reviewed for "plain error." *See* Fed.R.Crim.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). "[I]n most cases [the language of Rule 52(b) ] means that the error must have been prejudicial: It must have affected the outcome of the District Court proceedings." *United States v. Olano*, —— U.S. ——, ——, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993) (collecting cases); *see also United States v. Torres*, 901 F.2d 205, 228 (2d Cir.) (plain

error rule ordinarily invoked only to prevent miscarriage of justice that denied defendant a fair trial), *cert. denied*, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990).

■ Gaind's contention regarding the inconsistency of the verdicts on counts eight and twenty-two, on the other hand, presents a question of law as to which our review is plenary.

### A. *The Improper Cross–Examination.*

■ Gaind testified in his own defense, and asserted both that he was not aware of the backdating at Nanco, and that he had never instructed any Nanco employees to backdate reports submitted to the EPA. During her cross-examination of Gaind, the government attorney repeatedly directed Gaind's attention to the testimony of government witnesses that conflicted with Gaind's testimony, and asked him whether these witnesses were "mistaken." Further, after Gaind had responded to a previous question concerning quality controls at Nanco during his tenure by stating that "[w]e did not anticipate or believe that we would have people who will resort to lying to protect their positions, to protect their raises, to protect being beat up or whatever," the prosecutor twice asked Gaind if all the government witnesses were "lying." The prosecutor subsequently incorporated Gaind's characterization of the other witnesses' testimony as "mistaken" into her summation, reminding the jury that Gaind had testified that essentially all of the other witness were "mistaken," and added: "Isn't it funny how everyone is so mistaken but Arun Gaind?"

Gaind invokes *United States v. Richter*, 826 F.2d 206 (2d Cir.1987), as requiring reversal on this record. In that case, the prosecution cross-examined James Richter, the defendant, regarding the contrasting accounts given by a testifying F.B.I. agent, Frank Lazzara, and Richter concerning an interview of Richter by Lazzara, and re-

**2.** Gaind's trial counsel successfully objected to two of the prosecutor's attempts to ask Gaind whether other witnesses were "mistaken." Because these objections were sustained and no other objections or applications were made with respect to the line of cross-examination to which exception is taken on this appeal, the only questions forming the basis for this appeal were asked and answered without objection.

peatedly asked Richter to testify that Lazzara "was either mistaken or lying." *Id.* at 208. The defense made no objection to this cross-examination, but did object when a second F.B.I. agent who had been present at the disputed interview was called as a rebuttal witness to corroborate Lazzara's testimony. *Id.* In summation, the prosecution mischaracterized Richter's testimony, emphasized the contradiction between his testimony and that provided by the F.B.I. agents, and asserted that the jury could "determine that Mr. Richter is not telling you the truth because if he is, then these two agents, over and over again, in this courtroom, committed perjury." *Id.* at 209.

We reversed Richter's conviction and remanded for a new trial. *Id.* at 210. We noted that because Richter was provided the alternative of describing Lazzara's testimony as mistaken or lying and no objection to this cross-examination was taken by defense counsel, "we might be inclined to overlook the impropriety if that were defendant's sole claim of error." *Id.* at 208. However, in view of the calling of the second agent, over defense counsel's objection, to corroborate Lazzara's testimony after Richter had been forced to describe that testimony as false, and the improprieties in the prosecutor's summation, we required a new trial. *Id.* at 208–09. In doing so, we noted that "prosecutors have been admonished time and again to avoid statements to the effect that, if the defendant is innocent, government agents must be lying." *Id.* at 209 (collecting cases).

We do not regard *Richter* as controlling the decision of this case. On every occasion but one (when Gaind's testimony introduced the proposition that his employees were liars), the prosecutor asked Gaind only whether the employees whose testimony contradicted his were "mistaken" in that testimony, and the summation also followed that course. As we recognized in *Richter*, 826 F.2d at 208, there is a significant difference between these formulations. Asking a witness whether a previous witness who gave conflicting testimony is "mistaken" highlights the objective conflict without requiring the witness to condemn the prior witness as a purveyor of deliberate falsehood, i.e., a "liar."

Further, the opposing witnesses in this case were former Nanco employees, not government agents. *See United States v. Scanio,* 900 F.2d 485, 493 (2d Cir.1990) ("special concern" appropriate when defendant's testimony is contrasted with that of government agents); *see also United States v. Weiss,* 930 F.2d 185, 195 (2d Cir.) (same), *cert. denied,* —— U.S. ——, 112 S.Ct. 133, 116 L.Ed.2d 100 (1991).

In addition, the only significant prosecution witness in *Richter* other than the F.B.I. agents was "an alcoholic who had been fired from numerous jobs for mismanagement and incompetence." 826 F.2d at 207. In this case, by contrast, a raft of Nanco employees contradicted Gaind's testimony. Thus, in reviewing for "plain error" involving a miscarriage of justice, we find no basis to gainsay the district court's conclusion, in denying bail pending appeal, that:

> When the prosecutor asked Mr. Gaind while on cross-examination whether these witnesses were wrong or lying, she was merely revisiting a contention Mr. Gaind had already articulated in numerous ways. There is no possibility that these questions altered the outcome of the trial.

*Gaind,* 832 F.Supp. at 743.

We note, finally, that defendants invoking *Richter* have not succeeded in obtaining reversal of their convictions when the starkly offensive prosecutorial delinquencies in *Richter* were not replicated. *See Weiss,* 930 F.2d at 195; *Scanio,* 900 F.2d at 492–93; *United States v. Kiszewski,* 877 F.2d 210, 217 (2d Cir.1989); *United States v. Durrani,* 835 F.2d 410, 424 (2d Cir.1987). The keynote of our decisions in this area has been that: "Determinations of credibility are for the jury, not for witnesses." *Durrani,* 835 F.2d at 424 (citing *Richter,* 826 F.2d at 208 (citations omitted)). We perceive no reversible violation of that axiom in this case.

B. *Evidence Concerning the Truth-telling Provisions.*

■ Eight of the eleven former Nanco employees who testified for the government entered into nonprosecution agreements, by which the government agreed not to prose-

cute them. Two entered into cooperation agreements, by which the government agreed to bring their cooperation to the attention of their sentencing judge. All these agreements contained Truth-telling Provisions making the benefits of the agreements to the witnesses contingent upon the witnesses testifying truthfully.

In her opening statement, the prosecutor informed the jury that many of the government's witnesses had entered into either cooperation or nonprosecution agreements with the government, but did not discuss the substantive terms of the witnesses' obligations under these agreements. Defense counsel responded with an attack upon the former Nanco employees who were expected to testify for the government. He asserted that they had "stabbed both the company and Dr. Gaind in the back for agendas of their own reasons, which we may or may not learn during the course of this trial." He went on to say: "I tell you, this is a case about a show. It isn't Dr. Gaind's show." He added: "[The Nanco employees] sure didn't do in the labs what they have been taught by Dr. Gaind to do. And if they tell us something different here, then we are going to have to discover their motives, their agendas, because their motives and their agendas are certainly not those of Dr. Gaind's [sic]."

■ Because truth-telling provisions are used by the government "primarily to bolster the credibility of a witness," *United States v. Barnes*, 604 F.2d 121, 151 (2d Cir.1979), *cert. denied*, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980), the admission of testimony concerning such provisions before the credibility of a witness has been challenged " 'runs afoul of the well established rules of evidence that absent an attack on the veracity of a witness, no evidence to bolster his credibility is admissible.' " *United States v. Borello*, 766 F.2d 46, 56 (2d Cir.1985) (quoting *United States v. Arroyo–Angulo*, 580 F.2d 1137, 1146 (2d Cir.), *cert. denied*, 439 U.S. 913, 1005, 99 S.Ct. 285, 618, 58 L.Ed.2d 260, 681 (1978), 439 U.S. 1131, 99 S.Ct. 1052, 59 L.Ed.2d 93 (1979)). However, such testimony is admissible after the credibility of the witness has been challenged. *See United States v. Cosentino*, 844 F.2d 30, 32–34 (2d Cir.), *cert. denied*, 488 U.S. 923, 109 S.Ct.

303, 102 L.Ed.2d 322 (1988); *see also Arroyo–Angulo*, 580 F.2d at 1146. Furthermore:

Such an attack may come in a defendant's opening statement. If the opening sufficiently implicates the credibility of a government witness, we have held that testimonial evidence of bolstering aspects of a cooperation agreement may be introduced for rehabilitative purposes during direct examination. *See [United States v.] Smith*, 778 F.2d [925, 928 (2d Cir.1985)]; *United States v. Jones*, 763 F.2d 518, 522 (2d Cir.), *cert. denied*, 474 U.S. 981, 106 S.Ct. 386, 88 L.Ed.2d 339 (1985); *United States v. Maniego*, 710 F.2d 24, 27 (2d Cir.1983) (per curiam). In such a situation the "rehabilitation" stage has already been reached on direct.

*Cosentino*, 844 F.2d at 33. We went on to hold that the entire agreement, as well as testimonial evidence of its bolstering aspects, could be admitted on the government witness' direct testimony when the witness' credibility had been attacked in the defense's opening statement. *Id.* at 34–35.

This rule disposes of the present case. The government introduced both the witnesses' agreements and testimony concerning their Truth-telling Provisions only on the redirect examinations of its witnesses, and no objection was made to the introduction of this evidence. It seems clear, however, that Gaind's opening statement attacked the credibility of the prosecution witnesses, with the result that this evidence could have been admitted on their direct examinations. *A fortiori*, it was admissible on the government's rebuttal case. In any event, its admission surely did not constitute "plain error" on this record.

### C. *The Claim of Inconsistent Verdicts.*

■ The jury acquitted Gaind on count eight of the indictment, which charged him with submitting a backdated report to the EPA concerning Nanco's analysis of EPA Case No. 7734 in (approximately) September, 1987 in violation of 18 U.S.C. § 1001. On the other hand, the jury convicted Gaind on count twenty-two, which charged him with mail fraud in violation of 18 U.S.C. § 1341 based upon the receipt of payment from the United States on or about March 29, 1988 in

connection with the same EPA Case No. 7734. Gaind's argument that this alleged inconsistency requires the reversal of his conviction on count twenty-two is without merit.

Count eight and count twenty-two, although involving the same EPA case, relate to two distinct events occurring at distinct times—the submission of the backdated report in September 1987, and the receipt of payment therefor in March 1988. The jury could have concluded that although Gaind was not aware of the falsity of the report when it was submitted to the EPA by Nanco in September 1987, and thus did not knowingly tender a false statement to the EPA, he was aware of the backdating by the time payment was received in March 1988, and thus intentionally defrauded the EPA at that time. Accordingly, the conviction on Count twenty-two is not necessarily inconsistent with the acquittal on count eight.

Further, even assuming, *arguendo*, that the conviction on count twenty-two could not be reconciled with the acquittal on count eight, the conviction would stand. In *United States v. Powell*, 469 U.S. 57, 69, 105 S.Ct. 471, 479, 83 L.Ed.2d 461 (1984), the Supreme Court unanimously ruled that a defendant could validly be convicted of using a telephone to facilitate the commission of narcotics offenses, even though acquitted as to the underlying narcotics offenses. In doing so, the Court stated that: "[W]here truly inconsistent verdicts have been reached, '[t]he most that can be said ... is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.'" *Id.* at 64–65, 105 S.Ct. at 476 (quoting *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932)); *see also United States v. Acosta*, 17 F.3d 538, 544–45 (2d Cir.1994) (same); *United States v. Romano*, 879 F.2d 1056, 1060 (2d Cir.1989) (same).

## Conclusion

The judgment of conviction is affirmed.