**UNITED STATES of America,**
**Appellee,**

v.

**David DAMBRUCK, Eddy Valdez,**
**Defendants–Appellants.**

No.[s]: 06–3649–cr (L),
06–3738–cr (CON).

United States Court of Appeals,
Second Circuit.

March 19, 2008.

Glen A. Garber, New York, NY, for Defendant–Appellant Dambruck.

Patrick J. Brackley (Thomas Eddy, on the brief), New York, NY, for Defendant–Appellant Valdez.

Jonathan B. New, Assistant United States Attorney (Daniel A. Braun, Assistant United States Attorney, on the brief), for Michael J. Garcia, United States Attorney for the Southern District of New York, New York, NY, for Appellee.

PRESENT: Hon. SONIA SOTOMAYOR and Hon. REENA RAGGI, and Circuit Judges, Hon. CAROL BAGLEY AMON, District Judge.*

### SUMMARY ORDER

Defendants-appellants David Dambruck and Eddy Valdez appeal from judgments of conviction, following a jury trial, entered on July 21, 2006, in the United States District Court for the Southern District of New York (Koeltl, J.). Dambruck was convicted of conspiracy to distribute and possess with intent to distribute 3, 4 methylenedioxymethamphetamine ("MDMA" or ecstasy), in violation of 21 U.S.C. § 846, and was principally sentenced to 63 months' imprisonment and three years of supervised release. Valdez was convicted of conspiracy to distribute and possess with intent to distribute MDMA, in violation of 21 U.S.C. § 846; conspiracy to distribute and possess with intent to distribute at least one kilogram of heroin, in violation of 21 U.S.C. § 846; and possession of heroin with intent to distribute, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(C). He was principally sentenced to 121 months' imprisonment and five years of supervised release. We assume the parties' familiarity with the un-

derlying facts and procedural history of the case.

1. *Sufficiency of the Evidence*

■ Dambruck and Valdez argue that the evidence produced at trial was insufficient to prove that Valdez knowingly participated in the conspiracy to distribute MDMA, and that without Valdez, there could be no conspiracy because an agreement to conspire requires at least two culpable conspirators, *see United States v. Vazquez,* 113 F.3d 383, 387 (2d Cir.1997). After a review of the record, drawing all inferences in favor of the government, *see United States v. Stanley,* 928 F.2d 575, 576 (2d Cir.1991), we conclude that the government presented sufficient evidence to enable a rational jury to find Dambruck and Valdez guilty beyond a reasonable doubt. During trial, the government produced direct and circumstantial evidence from which a reasonable jury could find the charged conspiracy. *See United States v. Snow,* 462 F.3d 55, 66 (2d Cir.2006); *see also id.* at 68 ("We must be especially deferential when reviewing a conspiracy conviction for legal sufficiency." (citation and quotation marks omitted)). For example, Detective Marinez testified that he monitored a conversation between Valdez and a confidential informant (the "informant") in which Valdez stated that he had recruited two couriers to transport MDMA pills for Dambruck from St. Maarten to New York but that Dambruck had rejected them as too young. Cooperating witness Jose Rodriguez testified that Valdez told him that he would call Rodriguez when he received MDMA pills to see if Rodriguez could sell the pills, and further testified that he knew Valdez got his MDMA from

---

* The Honorable Carol Bagley Amon of the United States District Court for the Eastern District of New York, sitting by designation.

Dambruck. Rodriguez also testified that, in a meeting with Dambruck and Valdez, Dambruck gave Rodriguez a half-pill sample of MDMA to give to another dealer. In addition, the government introduced various transcripts of recorded phone conversations involving Dambruck and Valdez that could reasonably be understood to demonstrate their efforts to possess and distribute MDMA, including one conversation where Dambruck stated that he had discussed with Valdez potential couriers to bring MDMA from St. Maarten. This evidence is legally sufficient for a jury to find that Dambruck and Valdez had agreed to conspire to possess and distribute MDMA.

■ Valdez also argues that the evidence was insufficient to prove that he knowingly participated in a conspiracy to distribute heroin. We disagree. Detective Marinez testified that Valdez sold him approximately 100 grams of heroin on August 20, 2003, which Valdez concedes. The government further produced evidence that leading up to this sale Valdez remained in contact with a supplier. In addition, Rodriguez testified that he and Valdez sold heroin to a drug dealer named Papito on three occasions in 2003 and that they sold heroin on three other occasions in 2003 to a dealer named Manani. This testimony was corroborated by Valdez's statements following his arrest that the heroin he sold Marinez was obtained from a dealer named Papito and that he knew a heroin dealer named Papi (Rodriguez's nickname) and by handwritten notes found in Valdez's car bearing the name Manani with two phone numbers. Valdez's attempts to discredit Rodriguez's testimony in this Court are futile as we must assume the jury credited this testimony. *See United States v. Glenn,* 312 F.3d 58, 64 (2d

Cir.2002) ("[I]t is well-settled that when reviewing the sufficiency of the evidence we defer to the jury's assessment of witness credibility and the jury's resolution of conflicting testimony." (internal quotation marks omitted)). In short, a jury could reasonably find beyond a reasonable doubt that Valdez participated in a conspiracy to sell heroin.

2. *Admission of Evidence Regarding Terms of a Witness's Cooperation Agreement*

■ Dambruck and Valdez next argue that the government improperly elicited testimony from Rodriguez concerning the truth-telling requirements of his cooperation agreement. *See United States v. Gaind,* 31 F.3d 73, 78 (2d Cir.1994) ("Because truth-telling provisions are used by the government primarily to bolster the credibility of a witness, the admission of testimony concerning such provisions before the credibility of a witness has been challenged runs afoul of the well established rules of evidence that absent an attack on the veracity of a witness, no evidence to bolster his credibility is admissible." (internal citation and quotations marks omitted)). The government concedes that it erroneously elicited this testimony but argues it was harmless error, and certainly was not plain error.[1] We agree. On cross examination, the defendants both voraciously challenged Rodriguez's credibility on numerous issues. These challenges would have permitted the prosecution to introduce the truth-telling requirements on redirect. Furthermore, defense counsel for Valdez was able to inquire in detail into the truth-telling requirements, including the benefits that Rodriguez hoped to receive for cooperat-

---

1. Because the defendants failed to object to this testimony at trial, we review for plain error. *See Gaind,* 31 F.3d at 78.

ing. Under these circumstances, we cannot conclude that the government's premature introduction of the truth-telling requirements of the cooperation agreement constitutes plain error. *See United States v. Arroyo–Angulo*, 580 F.2d 1137, 1147 (2d Cir.1978) ("In view of the inevitability of defense counsels' attack on [the government witness's] credibility and the formidable assault which in fact was made in the defense openings, cross-examinations and summations, the error in the timing of the introduction of the cooperation agreement does not require reversal in this case.").

### 3. *Admission of Hearsay Testimony*

Dambruck also asserts that the district court erred by admitting four pieces of hearsay testimony: (1) the informant's May 15th statement to Marinez that the two individuals the informant was with were talking about selling ecstasy; (2) an unrecorded conversation in which Valdez told the informant that he had recruited two female couriers but Dambruck had rejected them; (3) a recorded call between Valdez and "Juan" where Juan told Valdez that his cousin can be a courier for Dambruck; and (4) a recorded call to Valdez by an unidentified male seeking "six pieces" of Dambruck's "thing." Defense counsel did not object to the admission of this testimony at trial. *See United States v. Tellier*, 83 F.3d 578, 581 (2d Cir.1996) ("[B]ecause his counsel failed to object to the hearsay statement at trial, we may review only for plain error.").

■ Marinez testified that, when the informant called him on May 15, 2003, the informant said he was with two men who were "talking about selling ecstasy." Because the informant was not a co-conspirator and the statement does not otherwise fall under a hearsay exception, the district court erred by admitting this statement.

However, given the ample other evidence presented at trial, we conclude that this error was harmless and thus did not affect the substantial rights of the defendant under the plain error standard. *See Johnson v. United States*, 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997).

■ The other three statements were properly admitted by the district court as admissions by a party opponent or as co-conspirator hearsay. *See* Fed.R.Evid. 801(d)(2). The statements made by Valdez were properly admitted against Valdez as an admission by a party opponent and against Dambruck as co-conspirator hearsay. The district court was not clearly erroneous, *see United States v. Gigante*, 166 F.3d 75, 82 (2d Cir.1999), in finding that Dambruck and Valdez were co-conspirators or that the challenged statements were made in furtherance of the conspiracy. *See also United States v. Bruno*, 873 F.2d 555, 562 (2d Cir.1989) (noting that a coconspirator hearsay "ruling can be inferred in the trial judge's decision to receive the evidence and to deny a directed verdict of acquittal on the conspiracy charge"). Furthermore, the challenged statements by the unidentified male caller and by Juan were admissible because they were not used to prove the truth of the matter asserted but rather to provide context for Valdez's statements. *See United States v. Dupre*, 462 F.3d 131, 137 (2d Cir.2006). Accordingly, the district court did not err in admitting these statements.

### 4. *Resentencing*

Finally, Dambruck contends that he should be resentenced because the district court was unduly restricted by this Court's decision in *United States v. Crosby*, 397 F.3d 103 (2d Cir.2005). *Crosby* remains controlling precedent, and thus we find this claim is without merit.

For the foregoing reasons, the judgment of the district court is AFFIRMED.