*U.S. v. Williams*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of September, two thousand nineteen.

PRESENT:

> JOHN M. WALKER, JR.,
> SUSAN L. CARNEY,
> RICHARD J. SULLIVAN,
> > *Circuit Judges.*

———————————————————————————

UNITED STATES OF AMERICA,

> *Appellee,*

> v.

STEVEN WILLIAMS,

> *Defendant-Appellant.*

———————————————————————————

No. 18-1181

FOR APPELLANT: TINA SCHNEIDER, Esq., Portland, ME.

FOR APPELLEE: LARA POMERANTZ (Rebekah Donaleski, Daniel B. Tehrani, *on the brief*), *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, NY.

.

Appeal from a judgment of the United States District Court for the Southern District of New York (Schofield, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on April 3, 2018, is **AFFIRMED.**

Defendant-Appellant Steven Williams appeals from a judgment of conviction entered on April 3, 2018, following a jury trial in the United States District Court for the Southern District of New York (Schofield, *J.*). Williams was convicted of conspiracy to distribute, or possess with the intent to distribute, cocaine and heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). At trial, the government relied on the testimony of three cooperating witnesses—Patrick Edwards, Louis Lombard, and Miguel Chavez—each of whom pleaded guilty to charges relating to their respective roles in the drug-trafficking conspiracy. The evidence at trial showed, generally, that the conspiracy consisted of Edwards procuring heroin and cocaine in Los Angeles and shipping those drugs to Williams in New York.[1] Like Edwards, Chavez and Lombard were Los Angeles-based drug dealers. They testified to Edwards's activity in the Los Angeles side of the bi-coastal conspiracy. Of the three cooperating witnesses, only Edwards testified to Williams's personal involvement in the conspiracy.

At trial, the prosecution questioned all three cooperating witnesses on direct examination about certain provisions of their cooperation agreements (the "truth-telling provisions"). The witnesses explained that these provisions required each to testify truthfully in order to receive government letters recommending reduced sentences in the witnesses' respective prosecutions. On appeal, Williams seeks to vacate his conviction on two bases. First, he challenges the prosecution's elicitation of this testimony, arguing that the prosecution engaged in improper bolstering by introducing evidence of the truth-telling

---

[1] Details of the conspiracy are set out in this Court's decision in a related appeal, *United States v. Edwards*, 723 F. App'x 48 (2d Cir. 2018).

provisions before the defense attacked the cooperating witnesses' credibility. Second, Williams argues that the prosecution's emphasis on these truth-telling provisions during its summation was improper vouching and constituted prosecutorial misconduct. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

Because Williams did not object at trial to the government's questioning regarding the cooperation agreements' truth-telling provisions, or to any relevant portion of the government's summation, we review solely for plain error. *United States v. Gaind*, 31 F.3d 73, 76 (2d Cir. 1994). To establish plain error, an appellant must demonstrate: (1) error; (2) that is plain, meaning "clear or obvious, rather than subject to reasonable dispute"; (3) that "affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings"; and (4) that "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *United States v. Ghailani*, 733 F.3d 29, 52 (2d Cir. 2013) (internal quotation marks omitted).

## I. Bolstering

Federal Rule of Evidence 608(a) provides that "evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked." This Court has therefore held that it is error for the prosecution to inquire into the truth-telling requirements of a cooperation agreement—which are "used by the government primarily to bolster the credibility of a witness"—before the defendant has attacked the credibility of a cooperating witness. *Gaind*, 31 F.3d at 78 (citation omitted).

Once a witness's credibility has been challenged, however, the government is free to elicit such testimony as rehabilitative evidence. *United States v. Arroyo–Angulo*, 580 F.2d 1137, 1146 (2d Cir. 1978). A credibility challenge sufficient to open the door to such rehabilitative evidence may come during the defense's opening statement. *Gaind*, 31 F.3d at 78. Where an opening statement "sufficiently implicates the credibility of a government witness," we have held, "testimonial evidence of bolstering aspects of a cooperation agreement may be introduced for rehabilitative purposes during direct examination." *Id.* (quoting *United States v.*

3

*Cosentino*, 844 F.2d 30, 33 (2d Cir. 1988)); *see also United States v. Quinones*, 511 F.3d 289, 313 n.16 (2d Cir. 2007) ("Because defendants attacked the credibility of government witnesses in their opening statements, their challenge to the elicitation of . . . rehabilitative testimony on direct rather than redirect examination is unavailing."). Moreover, if testimony on the truth-telling provisions of a witness's cooperation agreement has been improperly introduced before that witness's credibility has been challenged, but the defense challenges the witness's credibility later—for example, on cross-examination, or during closing arguments—reversal is not necessarily required. *See, e.g.*, *Arroyo-Angulo*, 580 F.2d at 1147 (holding that "the error in the timing of the introduction of the cooperation agreement [did] not require reversal," given the "formidable assault which in fact was made" on the cooperating witness's credibility later in trial).

As to the government's primary cooperating witness, Patrick Edwards, the prosecution's elicitation of testimony regarding the truth-telling provisions of his cooperation agreement on direct examination was not premature. Williams's defense counsel attacked Edwards's credibility in his opening statement, declaring, among other things, that Edwards's forthcoming testimony would be "riddled with inconsistencies" and would "not make sense in terms of what is normal . . . in the [drug dealing] industry." Tr. 40.[2] This line of argument opened the door for the government's introduction of rehabilitative evidence about Edwards's credibility on direct examination. There was thus no error in the timing of the government's inquiry into the truth-telling provisions of Edwards's cooperation agreement on direct examination.

As to Lombard and Chavez, the other cooperating witnesses, the prosecution's elicitation of testimony regarding the truth-telling provisions of their respective agreements appears to have come before the defense attacked their credibility. Williams has not, however, demonstrated that the premature introduction of this credibility-bolstering testimony "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings," as he must to prevail on plain error review. *United States v. Olano,* 507 U.S. 725,

---

[2] "Tr." refers to the trial transcript, which is found in Volumes I and II of the Appendix.

4

732 (1993) (internal quotation marks omitted). Whether the jury credited Lombard and Chavez's testimony had little bearing on Williams's conviction, as even Williams's defense counsel acknowledged at trial, when he declared to the jury on summation, "I'm not going to attack what Mr. Chavez had to say because I submit to you what Mr. Chavez had to say was believable. What Mr. Lombard had to say, believable. What Mr. Edwards had to say, a far different story." Tr. 676. Williams makes no argument on appeal as to why the premature inquiry into the terms of Chavez's and Lombard's agreements affected the outcome of his case, in the face of his attorney's concession that Chavez and Lombard's testimony was credible.

Thus, although the prosecution may have erred by prematurely introducing the truth-telling provisions of Chavez's and Lombard's cooperation agreements, Williams has failed to demonstrate that the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Olano,* 507 U.S. at 732 (internal quotation marks omitted). His challenge on this ground therefore fails.

## II.    Vouching

Williams urges next that the government improperly vouched for its cooperating witnesses in its closing arguments by declaring that the cooperators "knew that if they lied, they would get caught," Tr. 672, thereby suggesting that the prosecutors had "the ability to divine the truth" as to the witnesses' testimony. Appellant Br. at 18. It has long been established that prosecutors may not "vouch for their witnesses' truthfulness" or otherwise express their "personal belief or opinion as to the truth or falsity of any testimony or evidence or [the] guilt of the defendant." *United States v. Modica,* 663 F.2d 1173, 1178-79 (2d Cir. 1981) (internal quotation marks omitted). The government may, however, "reply with rebutting language suitable to the occasion" when defense counsel "impugns its integrity or the integrity of its case" or "attack[s] the prosecutor's credibility or the credibility of the government." *United States v. Thai,* 29 F.3d 785, 807 (2d Cir. 1994) (internal quotation marks omitted).

Reversal of a conviction on grounds of improper vouching is justified only if a prosecutor's improper remark "causes the defendant substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005) (quoting *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999). Where, as here, the defendant did not object at trial, and we review for plain error, we will reverse a conviction only in instances of "flagrant abuse." *Id.* (quoting *United States v. Zichettello*, 208 F.3d 72, 103 (2d Cir. 2000)).

In *Carr*, we rejected a defendant's argument that the government improperly vouched for a cooperating witness in circumstances very similar to those presented here. 424 F.3d at 227-28. There, the government had stated that the cooperating witnesses "ha[d] to tell the truth to [the jury], most importantly. Because if they don't tell the truth, then the government doesn't write them their letter." *Id.* at 228. We reasoned that "[t]he agreements did . . . require that the witnesses 'tell the truth' to benefit from them," and that this statement was a "permissible reference to the evidence in the case." *Id.* The government also speculated on the cooperating witnesses' motivations to tell the truth, in light of the truth-telling provisions in their cooperation agreements. *Id.* at 229. We found this speculation to be a permissible "simple, common-sense argument," not vouching. *Id.*

Several of the statements Williams challenges here are akin to the statements we found permissible in *Carr* and likewise do not constitute vouching. In *Carr*, we did find that some of the challenged statements might be vouching because they arguably were not supported by evidence in the record. *Id.* at 229-30. We concluded, however, that any error was insignificant when "read in the context of the trial as a whole," *id.* at 230, throughout which "the defense continually sought to undermine the credibility of the government's witnesses." *Id.* at 227. As in *Carr*, Williams invoked the witnesses' cooperation agreements throughout the trial, attempting to erode their credibility. Even if the remaining statements that Williams challenges could be construed as references to evidence outside the record, such statements did not cause Williams substantial prejudice or rise to the level of flagrant abuse.

\* \* \*

6

We have considered Williams's remaining arguments on appeal and conclude that they are without merit. For the foregoing reasons, the District Court's judgment is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court