# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

UNPUBLISHED
January 11, 2018

v

DEMARIO ROBEHIER WADE-BEY,

       Defendant-Appellant.

No. 335045
Muskegon Circuit Court
LC No. 15-000244-FH

Before: METER, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Defendant, Demario Robehier Wade-Bey, appeals as of right his conviction of second-degree home invasion, MCL 750.110a(3). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 9 to 27 years' imprisonment. We affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

This case arose from a home invasion that occurred early in the morning hours of October 14, 2015. The victim left home to transport her daughter to school. When she returned home, she found a vehicle parked in her driveway. A window to the home had been forced open, items had been moved from inside the home to outside, various electronics had been unplugged, and remote controllers had been piled by the window. As the victim began to telephone police, a man walked around the side of the victim's home, spoke briefly with her, jumped into the vehicle parked in the driveway, and drove off quickly. The victim provided police with a physical description of the man, as well as a description of the vehicle he was driving. The victim confidently identified defendant from a photographic lineup, and during trial, the victim positively identified defendant as the perpetrator. The vehicle, titled in the name of defendant's mother, was quickly identified and located in the parking lot of defendant's apartment. Pursuant to a search warrant, police placed a tracking device on the vehicle. Several days later, the tracking device alerted police to suspicious activity, and police discovered that the vehicle was evidently being used to conduct additional breaking-and-entering offenses. When police performed a traffic stop, they found that defendant was driving the vehicle. Defendant attempted to flee the traffic stop on foot, but he was apprehended. At trial, defendant claimed that he was not the person who committed the home invasion and argued that the victim must have seen his brother, who looked similar to him. The jury rejected defendant's argument and found him guilty of second-degree home invasion. Defendant now appeals.

-1-

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the evidence introduced at trial was insufficient to support his conviction. We disagree.

This Court reviews de novo a claim challenging the sufficiency of the evidence in a criminal case. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). "To determine whether the prosecutor has presented sufficient evidence to sustain a conviction, [appellate courts] review the evidence in the light most favorable to the prosecutor and determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013) (quotation marks and citations omitted). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "Juries, not appellate courts, see and hear witnesses and are in a much better position to decide the weight and credibility to be given to their testimony." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992) (quotation marks and citation omitted). With regard to a challenge to the sufficiency of the evidence, "[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999) (quotation marks and citation omitted).

Defendant challenges the sufficiency of the evidence to prove his identity as the person who committed the home invasion, but he does not challenge the sufficiency of the evidence to prove any other element of the crime. He states that the victim saw the perpetrator only briefly and also states that the perpetrator may have been his brother. "[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Drawing all reasonable inferences and making credibility choices in favor of the prosecution, *Nowack*, 462 Mich at 400, we conclude that the prosecution presented sufficient evidence to prove defendant's identity as the person who committed the home invasion.

The victim testified with great certainty that defendant was the person she saw and spoke to in her driveway on the day of the home invasion. She stated that she was "[o]ne hundred percent sure" and that she knew "[w]ithout a doubt" that defendant was this person. Although defendant denied that he committed the home invasion and testified that he did not recall ever visiting the victim's home, the jury was free to believe the victim, rather than defendant. Except in exceptional circumstances not at issue here, issues of witness credibility are for the jury. *People v Lemmon*, 456 Mich 625, 642-643; 576 NW2d 129 (1998). "The credibility of identification testimony is a question for the trier of fact that we do not resolve anew. Moreover, this Court has stated that positive identification by witnesses may be sufficient to support a conviction of a crime." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000) (citation omitted). Therefore, the victim's in-court identification of defendant is itself sufficient evidence of identification to support the jury's verdict of guilt.

Defendant argued to the jury and continues to argue on appeal that his brother resembles him and that the victim must have seen his brother. However, the prosecutor was not required to disprove defendant's theory that his brother was at the victim's home on the date of the home invasion. "Even in a case relying on circumstantial evidence, the prosecution need not negate

every reasonable theory consistent with the defendant's innocence, but need merely introduce evidence sufficient to convince a reasonable jury in the face of whatever contradictory evidence the defendant may provide." *People v Hardiman*, 466 Mich 417, 423-424; 646 NW2d 158 (2002) (quotation marks and citation omitted). Defendant's arguments go to the weight and credibility of the victim's testimony. Because defendant already presented these arguments to the jury at trial, the jury necessarily rejected these arguments when it found defendant guilty as charged. Drawing all reasonable inferences and making credibility choices in favor of the jury verdict, *Nowack*, 462 Mich at 400, we conclude that the prosecution presented sufficient evidence to prove defendant's identity as the person who committed the home invasion.

### III. RIGHT TO PRESENT A DEFENSE

Defendant next argues that the trial court deprived him of the right to present a defense and forced him to testify on his own behalf, against his will. Defendant's argument is without merit.

A defendant's right to present a defense is a fundamental right; in *People v Unger*, 278 Mich App 210, 249-250; 749 NW2d 272 (2008), this Court stated:

> Few rights are more fundamental than that of an accused to present evidence in his or her own defense. Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. This Court has similarly recognized that [a] criminal defendant has a state and federal constitutional right to present defense. [Quotation marks and citations omitted.]

"This Court reviews de novo whether defendant suffered a deprivation of his constitutional right to present a defense." *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009). However, this Court reviews for an abuse of discretion a trial court's decision whether to admit evidence. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

Defendant's theory of defense was to argue that he was not present at the victim's home on the date of the crime and that the victim simply saw someone who looked similar to defendant and who also had access to the vehicle owned by defendant's mother. Defendant elicited testimony from a police detective that defendant and his brother looked somewhat similar to one another. Defendant then testified that he and his brother have been mistaken for one another on many occasions and that his brother was in the vicinity on the date the home invasion occurred. Because defendant presented the evidence of mistaken identity, we conclude that he was not denied his fundamental right to present a defense.

Defendant contends that the trial court essentially forced him to testify in his own defense by requiring foundational testimony that defendant's brother was in the area on the date of the

crime before deciding whether to strike the detective's testimony that defendant and his brother looked similar to one another.[1]

On the record, defense counsel repeatedly expressed his advice that defendant not testify in his own defense. The trial court also explained to defendant that he was not required to testify in his own defense and that doing so could potentially be problematic. Defendant ignored the advice of his counsel and made the decision that he wanted to testify in his own defense, declaring that it was his constitutional right to do so. Defendant cannot claim error on appeal when he decided to testify against the advice of his attorney and despite the trial court's warnings about the potential negative consequences of his decision, because a defendant generally may not contribute to an alleged error and then claim it as error requiring reversal on appeal. *People v Witherspoon*, 257 Mich App 329, 333; 670 NW2d 434 (2003). In addition, the prosecution correctly points out that defendant could have chosen to present some other witness to testify that defendant's brother was in the area on the date of the crime.[2]

The record further indicates that defendant decided to testify in his own defense largely because he felt his lawyer was unprepared for trial, not because the trial court required foundational testimony about his brother's whereabouts on the date of the crime. Defendant stated that he had spoken to a different attorney before trial and complained that his attorney was assigned the case only two days before trial and had not had enough preparation time. Defendant asserted that counsel had not had time to "present a fair and decent case" and said, "I would be glad to present a defense for myself given this situation." Based on this record, we conclude that defendant's argument is without merit and that the trial court did not force defendant to testify in his own defense.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that he was denied the effective assistance of counsel. We disagree.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "This Court reviews findings of fact for clear error and questions of law de novo." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "Where there has been no evidentiary hearing and no findings of fact by the trial court, this Court reviews de novo the entire record to

---

[1] The court declined to strike the detective's testimony after hearing that defendant would provide the foundational testimony.

[2] To the extent that defendant is arguing that the trial court erred in requiring the foundational testimony before allowing testimony regarding defendant's resemblance to his brother, we disagree. Defendant argues that his brother's purported access to his mother's van was in itself enough to make the testimony about resemblance relevant, but the trial court did not abuse its discretion by requiring a more substantial connection between the brother and the incident before admitting the testimony.

determine whether the defendant's trial counsel's representation constituted the ineffective assistance of counsel." *People v Rose*, 289 Mich App 499, 524; 808 NW2d 301 (2010). This Court has denied defendant's motion to remand, *People v Wade-Bey*, unpublished order of the Court of Appeals, entered June 16, 2017 (Docket No. 335045), and this Court's review "is limited to mistakes apparent on the record." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that defense counsel's performance was objectively unreasonable in light of prevailing professional norms, and that, but for counsel's error, it is reasonably probable that the outcome would have been different. *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). Effective assistance of counsel is presumed, *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012), and a defendant bears a heavy burden of proving otherwise, *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009). In doing so, a defendant must overcome a strong presumption that the challenged conduct was sound trial strategy. *People v Knapp*, 244 Mich App 361, 385-386, 386 n 7; 624 NW2d 227 (2001). A defendant can only overcome the presumption by showing that counsel failed to perform an essential duty and that the failure was prejudicial to the defendant. *People v Hampton*, 176 Mich App 383, 385; 439 NW2d 365 (1989).[3] Counsel's performance must be measured against an objective standard of reasonableness, *Payne*, 285 Mich App at 188, 190, and without benefit of hindsight, *People v LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995). This Court "neither substitutes its judgment for that of counsel regarding matters of trial strategy, nor makes an assessment of counsel's competence with the benefit of hindsight." *People v Mutuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004). Defense counsel may be found ineffective when unprepared for trial. *People v Caballero*, 184 Mich App 636, 640; 459 NW2d 80 (1990). However, to succeed on such a claim, a defendant must demonstrate that "his counsel's failure to prepare for trial resulted in counsel's ignorance of, and hence failure to present, valuable evidence that would have substantially benefited" his case. *People v Bass (On Rehearing)*, 223 Mich App 241, 252-253; 565 NW2d 897 (1997), vacated in part on other grounds 457 Mich 866 (1998).

Defendant first claims that his counsel failed to adequately prepare for trial because he failed to investigate and call alibi witnesses at trial. However, defendant does not indicate what his purported alibi witnesses would testify about if called and does not offer affidavits from those witnesses regarding their proposed testimony. When an ineffective-assistance claim is premised on counsel's failure to present an alibi witness, the defendant must demonstrate that the witness would have given favorable alibi testimony. *Pickens*, 446 Mich at 327. Without affidavits or statements from defendant's purported alibi witnesses, this Court cannot conclude that their testimony would have affected the outcome of the case. Therefore, defendant's ineffective-assistance claim fails.

---

[3] Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority. See *People v Vandenberg*, 307 Mich App 57, 66 n 2; 859 NW2d 229 (2014).

Defendant next argues that his attorney rendered ineffective assistance when he failed to object to the prosecutor's characterization of defendant as a liar during closing arguments. Defendant's argument is without merit.

Prosecutors are generally accorded great latitude regarding their arguments. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). "A prosecutor may argue from the facts that a witness, including the defendant, is not worthy of belief, and is not required to state inferences and conclusions in the blandest possible terms." *People v Launsburry*, 217 Mich App 358, 361; 551 NW2d 460 (1996) (citation omitted). Further, "[a]ppellate review of improper prosecutorial remarks is generally precluded absent objection by counsel because the trial court is otherwise deprived of an opportunity to cure the error. An exception exists if a curative instruction could not have eliminated the prejudicial effect or where failure to consider the issue would result in a miscarriage of justice." *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994) (citations omitted).

We conclude that the prosecutor's closing argument, to which defendant now objects, qualified as permissible argument that defendant's trial testimony was not worthy of belief. The victim clearly and unequivocally identified defendant as the person she encountered in her driveway, who told her that he was in the neighborhood to work on a roof. The victim also clearly identified defendant as driving a distinctive gold, Nissan Quest with a temporary, paper license plate and a dent in the rear bumper. Defendant, in contrast, testified that he did not recall his whereabouts on that day and that he did not remember ever being at the victim's house. Although police tracked the vehicle and located it at defendant's apartment, defendant claimed that his mother rarely allowed him to drive the vehicle, and he alleged that other individuals had more access to the vehicle than he did. Police witnesses testified that when they performed a traffic stop several days after the home invasion, defendant was driving the vehicle and he jumped out of the vehicle and fled. Defendant testified that he did not recall being pulled over by police and that he did not remember fleeing the traffic stop, but he testified that he did remember the police pulling their guns on him as he lay on the ground. In light of this trial testimony, the prosecutor was not out of bounds in arguing that defendant's trial testimony was not worthy of belief.

Even if the prosecutor's remarks could be deemed improper, there would be no error requiring reversal. The trial court instructed the jury that the attorneys' comments were not evidence, and such a curative instruction alleviated any prejudicial effect. "It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). To show ineffective assistance of counsel, defendant must show that there is a reasonable probability that, but for counsel's failure to object to the prosecutor's closing remarks, the result of the proceeding would have been different. *Stanaway*, 446 Mich at 687-688. Given the curative instruction and the substantial evidence of defendant's guilt, we conclude that defendant cannot meet this burden.

## V. SENTENCING

Finally, defendant argues that Offense Variable (OV) 19 was improperly scored and that the trial court failed to take his mental health issues into account when imposing sentence. Defendant's arguments are without merit.

"When a trial court does not depart from the recommended minimum sentencing range, the minimum sentence must be affirmed unless there was an error in scoring or the trial court relied on inaccurate information." *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016).

The Michigan Supreme Court has explained both the quantum of evidence necessary to support a scoring decision and the standard of review to be used by an appellate court:

Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [*People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (citations omitted).]

The trial court sentenced defendant to a term of 9 to 27 years' imprisonment for his conviction of second-degree home invasion, as a fourth-offense habitual offender.[4] Second-degree home invasion is a Class C felony with a statutory maximum sentence of 15 years' imprisonment. MCL 777.16f. After the trial court scored the sentencing guidelines, defendant had a PRV score of 80 points and an OV score of 30 points. These scores placed defendant in PRV level F and OV level III. The generally-applicable minimum sentencing range was 43 to 86 months. MCL 777.64. However, because defendant was sentenced as a fourth-offense habitual offender, the upper limit of the recommended minimum sentence range was increased by 100%, making the minimum sentence range 43 to 172 months' imprisonment. MCL 777.21(3)(c).

If OV 19 is assigned zero points, rather than 10 points, defendant has an OV score of 20 points, which places him at PRV level F and OV level II. The generally-applicable minimum sentence range would be 36 to 71 months' imprisonment. MCL 777.64. However, because defendant was sentenced as a fourth-offense habitual offender, the upper limit of the recommended minimum sentence range would be increased by 100%, making the minimum sentence range 36 to 142 months' imprisonment. MCL 777.21(3)(c). The trial court sentenced defendant to a term of 9 to 27 years' imprisonment, a sentence that remains within the sentencing guidelines range even if OV 19 had been assigned zero points. Because defendant's sentence for second-degree home invasion is within the applicable guidelines range even if zero points had been assigned to OV 19, this Court must affirm defendant's sentence. See *Schrauben*, 314 Mich App at 196.

The variable was, in any event, correctly scored. OV 19 is assigned 10 points if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice[.]" MCL 777.49(c). Fleeing from police can form the basis for assigning 10 points for OV 19. See *People v Cook*, 254 Mich App 635, 638-641; 658 NW2d 184 (2003), overruled on other grounds by *People v McGraw*, 484 Mich 120, 133; 771 NW2d 655 (2009); see also *People v Smith*, 488

---

[4] Defendant does not contest his status as a fourth-offense habitual offender.

Mich 193, 202; 793 NW2d 666 (2010) (stating that conduct that occurred after completion of the offense may be considered when scoring OV 19).

Defendant notes that the break-in at issue in this case occurred on October 14, 2015, but he ran from police during a traffic stop six days later, on October 20, 2015. Defendant argues that the traffic stop occurred the same day he was alleged to have participated in a number of other break-ins and that there was no evidence in this case that he knew he was being investigated for the October 14, 2015, break-in when he ran from police on October 20, 2015. Therefore, defendant implicitly argues that he thought he was fleeing arrest for those other break-ins, but did not think he was fleeing arrest for the break-in committed on October 14, 2015. Defendant argues that his decision to run from police on October 20, 2015, cannot be used to assign 10 points to OV 19 because the act of flight was not connected to the offense for which he was being sentenced. Plaintiff argues, in contrast, that police were seeking to arrest defendant for the October 14, 2015, break-in when they conducted the traffic stop of defendant's vehicle on October 20, 2015. Thus, plaintiff argues that defendant's traffic stop provides appropriate grounds to assign 10 points to OV 19.

We conclude that the trial court appropriately assessed OV 19 at 10 points. Trial testimony indicated that the victim of the break-in at issue in this case provided police with a description of the vehicle defendant used in connection with the break-in at her home. Police used that description to locate the vehicle at defendant's apartment, and thereafter obtained a search warrant allowing the placement of a GPS tracker on defendant's vehicle. Police monitored activity on the GPS tracker and decided to stop defendant's vehicle when they noticed it was potentially connected to additional break-ins. Police conducted the traffic stop, in part, because they were seeking to arrest defendant for the break-in at issue in this case, and witnesses testified that defendant ran from the traffic stop. For these reasons, we conclude that defendant's flight was sufficiently connected to the break-in at issue in this case to be properly considered at sentencing.

Defendant also argues that the trial court failed to take into account his mental health issues when imposing sentence. However, the record reflects that defense counsel expressly raised defendant's mental health issues (depression, anxiety, and attention-deficit disorder) at sentencing. The presentence investigation report (PSIR) also mentioned defendant's "mental health ailments."[5] At the sentencing hearing, the court stated that it had reached a sentencing decision the prior evening and then stated that "there's just no sign, despite some of the things that [defendant] says he's accomplishing that warrant[s] any change in the road here." We reject defendant's argument that resentencing is required because the trial court did not explicitly delineate how defendant's mental health issues played into its sentencing decision. To the extent

---

[5] It is reasonable to assume that the trial court reviewed the PSIR. For example, the court stated that it had "worked on [defendant's] file over the weekend" and mentioned that it had read a long letter from defendant. This letter is attached to the PSIR.

defendant may be arguing that his sentence must necessarily be lowered because of those issues, we reject that argument as well.[6]

Affirmed.

/s/ Patrick M. Meter
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra

---

[6] We note that the trial court did not sentence defendant at the top of the guidelines. Defendant had a guidelines range of 43 to 172 months' imprisonment and the trial court sentenced him to a minimum term of 108 months' imprisonment.